BENJAMIN BARKER *vs.* DAVID F. BROWN.

Bristol.   Oct. 30, 1884. — Jan. 9, 1885.   C. ALLEN & COLBURN, JJ.,
absent.

B. bargained with A. for a car-load of goods of a certain quality.   A. sent the
goods, by a railroad company, consigned to himself, and sent to B. a bill for
the goods, and an order on the carrier to deliver to B. on payment of freight.
B. paid the freight, and, finding that the goods were not of the quality ordered,
refused to receive them.   The carrier notified B. that, if he did not take the
goods, it would store them.   The goods were not taken away, and the carrier
stored them with a warehouseman, but did not notify either A. or B. of this
fact, which came to the knowledge of B. ten days after the storage began.
Five months afterwards, B. made an arrangement with A. and bought the
goods.   The carrier delivered a portion of them without claiming a lien, and
refused to deliver the remainder unless his charges were paid.   B. then re-
plevied the remainder from the warehouseman.   *Held*, that the warehouseman
had a lien on the goods replevied for his storage charges on all the goods;
and that the action of replevin could not be maintained.

REPLEVIN of a car-load of shooks. Trial in Superior Court, before *Brigham*, C. J., who reported the case for the determination of this court, in substance as follows:

In March, 1883, the plaintiff bargained with the Shepard and Morse Lumber Company of Boston for a car-load of shooks, of a certain grade and quality. The shooks were sent by the Old Colony Railroad Company. The way-bill consigned the goods to the Shepard and Morse. Lumber Company at Fall River. They sent to the plaintiff a bill of the shooks, and an order to the Old Colony Railroad Company to deliver the goods to the plaintiff, on payment of freight by Barker and Company, who indorsed on the order: " Freight to Barker & Co. Car to Montaup Mills."

The shooks came to Fall River, and the plaintiff paid the freight on them before seeing them. The shooks were not of the quality ordered, and the plaintiff refused to take them, and so notified the Old Colony Railroad Company and the Shepard and Morse Lumber Company at once. The shooks remained in the freight car on the track of the railroad company for twenty-one days or more. No notice was sent by the railroad company to the Shepard and Morse Lumber Company, then or at any time, of any intended action on its part; but it notified the plaintiff that, if he did not take the shooks, it would store them. The plaintiff replied that he should not take the shooks, as they were not what he ordered; but the railroad company sent no notice to the Shepard and Morse Lumber Company. It then, on April 6, 1883, sent the shooks to the defendant, who had stored goods for hire and had a warehouse, though he did not have a certificate as a public warehouseman. The shooks remained with the defendant until August, 1883. The plaintiff heard that the shooks were at the defendant's some ten days after they were sent there. This was the only notice the plaintiff had as to where the shooks were.

In August, 1883, the plaintiff, having made a satisfactory arrangement with the Shepard and Morse Lumber Company, took away a portion of the shooks stored with the defendant. The plaintiff testified that no lien was then claimed by the defendant. A few days after, the plaintiff went for a load of the shooks; the defendant refused to let them go, unless by order

of the railroad company.  The plaintiff saw the agent of the railroad company, who telephoned to the defendant.  The plaintiff then went back, and the defendant said, "It's all right," and the plaintiff took the load of shooks.  The plaintiff testified that nothing was said by the agent of the railroad company or by the defendant about claiming any lien for storage before taking the first load.  The plaintiff went, after a few days, for a second load, when the defendant said he wanted pay for storage, and claimed a lien therefor.  The plaintiff denied the right of the defendant to any lien for storage, and the defendant allowed two more loads to go, and then refused to let any more loads go unless his bill was paid.  On August 14, the defendant presented a bill to the plaintiff for storage of the shooks.  The plaintiff refused to pay the bill, and then replevied the shooks. The defendant testified, disputing the evidence of the plaintiff as above, except as to the order from the railroad company, which he said he thought was in writing.

Upon this evidence, the judge directed a verdict for the defendant.  If the direction was right, the verdict was to stand; otherwise, a new trial to be ordered.

*H. K. Braley*, for the plaintiff.

*J. M. Morton*, for the defendant.

Devens, J.  The goods which the railroad company transported were, by the way-bill, consigned to the owner, the Shepard and Morse Lumber Company, and an order was sent to the railroad company to deliver the goods to the plaintiff, who transmitted the same to the railroad company with the order that the freight should be charged to him, and a direction where the car containing the goods should be sent.  The plaintiff was thus the indorsee of the way-bill of the goods.  He subsequently refused to take them, on the ground that they were not of the quality bargained for.

When a reasonable time had elapsed, it was the right of the railroad company to store the goods with some suitable and responsible warehouseman, and thus discharge itself from further liability.  It was not compelled to determine the dispute which had arisen between the plaintiff and the owner, and such storing of the goods would be equivalent to a delivery thereof to whichever of the two parties was entitled thereto.

*Hamilton* v. *Nickerson*, 11 Allen, 308. *Bickford* v. *Metropolitan Steamship Co.* 109 Mass. 151. *Miller* v. *Mansfield*, 112 Mass. 260. *Rice* v. *Hart*, 118 Mass. 201. *Fisk* v. *Newton*, 1 Denio, 45. *Alden* v. *Carver*, 13 Iowa, 253. *Illinois Central Railroad* v. *Alexander*, 20 Ill. 23.

It is the contention of the plaintiff, that, the Shepard and Morse Lumber Company not having been notified to remove the goods, the carrier could not deposit them so as to subject them to the warehouseman's lien; and that a lien could not be created except with the assent of the owner. We are not aware that it has ever been held to be the duty of the carrier to notify the owner or consignor of goods of a refusal to accept them before he can terminate his own liability as carrier, and thereafter hold them himself, or transfer them to another, to hold as a warehouseman. It is for the owner or consignor of goods to have some one at the place of delivery, when their transit is completed, to accept them. If he does not, the rule which imposes a duty upon the carrier to hold them himself as warehouseman, or to store them in some convenient place, sufficiently protects the goods he has shipped. It would be unreasonable that the carrier should not be allowed to terminate his contract of carriage until after notice to the consignor and subsequent assent by him to the storage of the goods. The assent of the owner or consignor of goods that a lien thereon for storage shall, under certain circumstances, be created, is one to be inferred from the contract of shipment he has made. If his consignee cannot be found, or, being found, refuses to accept, he must be held to authorize the storage of the goods. If the carrier is authorized to store them, it does not require argument to show that he may subject them to a lien for the necessary storage charges, and that the owner cannot thereafter sell or transfer them so as to divest the lien.

The case of *Storms* v. *Smith*, 137 Mass. 201, on which the plaintiff relies, has no proper application to this case. It was there held, that a mortgagor of personal property, the mortgage having been recorded, could not store it so as to create a lien thereon as against the mortgagee. By the record, the defendant had notice of the mortgage, and was not at liberty to assume that the mortgagor had the absolute *jus disponendi*

from his possession of the property. Nor could he assume that the mortgagee had ever authorized any storage thereof by which his interest would be affected.

As the defendant had lawfully a lien on these goods for storage, although he may have delivered part of them without insisting upon it, as they constituted a single shipment, he had a right to retain the residue for the whole amount thereof; and the plaintiff was not entitled to replevy them. *Lane* v. *Old Colony & Fall River Railroad*, 14 Gray, 143. *New Haven & Northampton Co.* v. *Campbell*, 128 Mass. 104.

*Judgment on the verdict.*