Western Bank v. Marion County Distilling Company.

* CASE 15—PETITION EQUITY—OCTOBER 22, 1887.

# Western Bank v. Marion County Distilling Company.

APPEAL FROM LOUISVILLE CHANCERY COURT.

TO ENTITLE A WAREHOUSEMAN TO ASSERT A LIEN FOR PURCHASE MONEY as against a *bona fide* holder of a warehouse receipt, it is not necessary that the amount of purchase money unpaid should be set forth in the receipt. It is sufficient if it appears from the receipt that the purchase money is unpaid, without stating the amount.

BROWN, HUMPHREY & DAVIE FOR APPELLANT.

1. The warehouse statute intended to make warehouse receipts "negotiable," so that they would pass freely, without being subject to secret liens or equities of others; and hence provided that "if encumbered by prior lien," the "character and extent" of that lien "shall" be "fully set forth and explained in the receipt." (Acts 1869, vol. 1, page 57.)

2. The negotiable receipt in this case was negotiated to the bank for full value, and the bank had no actual notice that there was any other or prior lien on the whisky the receipt represented, but was informed by the pledgeor, Wolf, and believed, that the whisky was free of all lien, and that the title was perfect and unencumbered.

3. The words in the receipt "deliverable to the holder upon surrender to me of the same, and payment of the purchase price of said whisky," did not reserve or create a prior lien, because the "extent" of the unpaid purchase money was not "fully" or at all "set forth and explained in the receipt." (Greenbaum v. Megibben, 10 Bush, 422.)

4. It is no answer to this to say that the words in the receipt put the bank upon "inquiry," and required it to find out, from outside sources, the extent of the alleged lien. The statute requires the extent to be "fully" set forth "in the receipt" itself. Nothing less than the precise notice required in the statute will sustain the lien. (Pearce v. Hall, 12 Bush, 212; Long v. Burk, 2 Bush, 90; Foushee v. Grigsby, 12 Bush, 75.)

5. To reserve a valid lien in a deed to land, the amount of the debt must be set forth in the deed; and so of a lien on personalty, and so as to a mechanic's lien. There is still greater reason that the amount of the debt must be "fully" set forth "in the warehouse receipt" before its

* This case has only recently been ordered to be reported.

negotiability will be thus lessened. Merely stating that "the purchase price" is still unpaid is insufficient. (Long v. Burk, 2 Bush, 91; Gritton v. McDonald, 3 Met., 253; Pearce v. Hall, 12 Bush, 213.)

BARNETT, NOBLE & BARNETT for appellee.

1. By the common law no one could obtain possession of the whisky in controversy without first paying appellee the purchase price thereof.
    The purchaser of goods can not demand delivery of the goods without alleging that he is ready and willing to pay the purchase price. (Benjamin on Sales, sec. 677.)
2. Appellant accepted the pledge of the receipts with full notice that the purchase price was unpaid, and must be paid before the whisky would be delivered, and such a pledgee has no standing in a court of equity as against the former owner having a lien for unpaid purchase money. (Morton v. Robards, 4 Dana, 258; Bailey & Carter v. Welch, 4 B. M., 244.)
3. The warehouse receipts are good common law warehouse receipts, and the lien for unpaid purchase money is sufficiently retained therein. Section 5 of the act of 1869 does not apply to this case. That section applies only where one issues a warehouse receipt for his own goods.
4. Even if these receipts are governed by section 5 of the act of 1869, still the lien is sufficiently retained. (Greenbaum v. Megibben, 10 Bush, 419; Cochran, &c., v. Ripy, 13 Bush, 550; Commonwealth v. Mason, 5 Ky. Law Rep., 248.)
5. It is no excuse that the holder of such a receipt accepted it without reading it. The court will not relieve against such inattention. (L. & N. R. Co. v. Brownlee, 14 Bush, 599.)
6. So far as the decisions under the registration laws are analogous to this case, they are against the appellant. (Johnston v. Gwathmey, 4 Litt. 320; Thornton v. Knox, 6 B. M., 74; Tierman v. Thurman, 14 B. M. 279.)
    The case of Pearce, Tolle & Holton v. Hall, 12 Bush, 210, commented on.

JUDGE PRYOR delivered the opinion of the court.

This action is between the Western Bank and the Marion Distillery Company, and involves the title to a number of barrels of whisky.

Henry Wolf, who seems to have been an extensive dealer in whisky, purchased of the distillery company some twenty-five hundred barrels, at a fixed price, some of which was delivered by the execution of certain ware-

house receipts to Wolf, who transferred them to the bank in pledge, or as a security, for the loan of money.

The receipts read as follows :

"Marion Fire Copper Whisky.

"LOUISVILLE, KY., Nov. 7, 1881.

"Received in the Marion County Distillery Company's bonded warehouse, No. 372, Fifth District of Kentucky, for account, and subject to the order of Henry Wolf, Louisville, Ky., deliverable to the holder upon surrender to me of the same, and payment of the purchase price of said whisky, and all charges thereon, and storage on the same from 7th day of November, 1882, at the rate of 5 cents per barrel per month, ten barrels Marion County Distillery Company's fire copper whisky, entered into bond as follows," &c.

The serial numbers are then given, and the number of gallons in each barrel, and the receipt signed by the president, B. F. Mattingly.

The other receipts were similar in their character, and evidenced the ownership in Wolf at the time of the transfer of 185 barrels that were pledged to the bank by Wolf as collateral security for the loans made.

By the provisions of the act of March 6th, 1869, all such receipts are made "negotiable and transferable by indorsement in blank, or by special indorsement, and with like liability as bills of exchange now are, and with like remedy thereon." (See 3d section of the act.)

The 5th section of the same act provides that no warehouseman or other person shall issue any receipt for any goods, &c., for any money loaned or other indebtedness, unless such goods, &c., shall, at the time of issuing the receipt, be the property, without incumbrance,

of said warehouseman; "and if incumbered by prior lien, then the character and extent of that lien shall be fully set forth and explained in the receipt, and shall be actually and in fact in store and under the control of said warehouseman at the time of giving such receipt or voucher."

Wolf became insolvent, with the whisky purchased in the possession of the distillery company in their bonded warehouse, and the receipts given for its delivery in the possession of the bank as security for the money loaned. The distillery company set up its equitable lien for the purchase money, as it had not been paid, and the bank claimed a prior equity by reason of the transfer to it of this negotiable paper for value.

The claim of priority by the bank over the distillery company is asserted for the reason that it had no notice, at the time it acquired the paper, of the extent of the company's lien, and this is the only question necessary to be determined in the case.

It is insisted by counsel for the bank that as the mode of retaining the lien by the warehouseman is purely statutory, the statute must be strictly followed, and the amount due upon or for the whisky, or the goods for which the receipt is given, expressly and certainly stated.

The case of Greenbaum v. Megibben, 10 Bush, 419, is relied on to sustain this view of the statute. In that case Megibben, the warehouseman, executed to Wolf & Co. a receipt for fifty barrels of whisky, describing it, deliverable on return of the receipt and payment of storage and charges. There was no attempt even, in that case, to retain a lien for the purchase money, or to

notify others that there was such an incumbrance on the property. Wolf transferred the receipt to Greenbaum Bros. & Co., and when they demanded the whisky Megibben asserted his claim for the purchase money. This court held that the Legislature, in making such paper negotiable, in order to protect the rights of the innocent holder taking it in the usual course of trade, required that the warehouseman, in executing such a receipt, should place upon its face all the evidences of any lien that might exist upon the property the receipt was intended to represent, and further said "that the warehouseman could easily have protected his rights, and at the same time prevented loss to innocent parties, by complying with the plain letter of the statute *in indorsing the nature and extent* of his lien on the receipt." Megibben, by executing his receipt, said in effect to all who might come into the possession of it as purchasers for value, that the whisky was the property of Wolf & Co., free from any incumbrance.

Is such the character of the receipt in this case? We think not. The paper on its face acquainted the purchaser not only with such facts as should put him on inquiry, but gave the nature, character and extent of an incumbrance upon the whisky that would or ought to have prevented any one, exercising ordinary prudence and judgment in a business transaction, from accepting the paper as a collateral, or becoming, by purchase, the absolute owner.

The appellant, as against the company, was not a *bona fide* holder. It had notice of the infirmity of the paper, and that Wolf held the whisky subject to the lien of the distillery company. When applied to any

·other character of negotiable paper, there can be no doubt as to the priority in equity of the distillery company over the bank. The bank would have taken it ·subject to all the equities of the original drawer. It ·could not, in fact, be said to be negotiable paper. It is insisted, however, that this is a statutory lien, and the statute must be strictly pursued; therefore, the nature ·of the lien and the amount due on the whisky should be stated.

The statute provides that if incumbered, the *character* and *extent* of the lien·shall be fully set forth. Here it is evident, from the face of the receipt, that the lien is for purchase money; that the extent of the lien is the ·entire purchase money, and that it remains unpaid. 'The kind of whisky sold is mentioned in the receipt, .and a statement that when the purchase money is paid the holder of the receipt becomes entitled to the posses- ·sion of the whisky.

This, it seems to us, was not only sufficient to put the bank on inquiry, but was such an evidence of the ·drawer's right to a set-off against the paper as would have precluded one who was disposed to exercise the slightest care and caution in a business transaction from purchasing· it. The paper was, in fact, worthless upon its face to the purchaser. The purchase money he was told was unpaid, and while the whisky might have sold for a greater sum than the purchase price, as negotiable paper it was worthless, and if the bank or its officers had read the receipts, or declined to rely on Wolf's representation, the paper would not have been accepted. 'The statute in regard to liens for the purchase money ·of land provides that no lien exists as against a pur-

chaser unless it is stated in the deed what part of the consideration remains unpaid. In such a case the statement that a lien is retained for the purchase money, without any thing more, would not create a lien.

The amount due on the land, and for which the lien exists, must appear on the face of the deed by describing the purchase money notes, or stating in express terms the amount unpaid.

Is such a construction, of the language used, if alike in each case, to be applied to commercial paper where the purchaser has notice before he obtains the receipt, or by reason of its stipulations, that the purchase money is unpaid? Should this court, in construing such a statute, disregard the well-established rights of parties with reference to negotiable paper, and hold that because of the statute the purchaser, even with notice before he becomes the owner, is holding *bona fide* because the statute requires the nature and extent of the lien to be set forth in the receipt? If Mattingly had said to the bank, before its purchase of the paper, that the distillery company held a lien by agreement for the entire purchase money, and then had the actual possession of the whisky, would not the bank, in becoming a purchaser after notice, hold the receipt *mala fide?* Such paper is made negotiable by the statute, *and with like liability as bills of exchange now are, and with like remedy thereon.*

The appellant was informed, when it read the receipt, that all the purchase money was due. This was the extent of the lien, and although the amount is not inserted, it informed the purchaser that the paper was

worthless, or that if he took it he held the whisky subject to the vendor's lien.

The purchaser might have been required to ascertain the amount of the purchase money ; but it knew, when it made the purchase, that the purchase money, whatever it was, had to be paid to the vendor. The receipts in this case were not read by the chief officer of the corporation, but relying, as he states, on the representation of Wolf, accepted the receipts as security for the money, and while his negligence can not enlarge or diminish the rights of the lien-holder under the statute, it is evident that if the chief officer had examined the contents of the receipts, that the money would not have been loaned ; and when the nature and extent of the lien is so apparent, as that any one of ordinary business capacity, in reading the receipts, must have been informed of the appellee's equitable right to the purchase money, it is such a compliance with the statute as gives to the warehouseman a superior equity to that of the purchaser.

The judgment below is, therefore, affirmed.