[Civ. No. 4618.    First Appellate District, Division One.—October 17, 1924.]

NAT BOAS et al., as Executors, etc., Appellants, v. DE PUE WAREHOUSE COMPANY (a Corporation), Respondent.

[1] BAILMENTS—WAREHOUSEMEN—NON-NEGOTIABLE RECEIPT—LIEN FOR CHARGES—REISSUANCE OF RECEIPT.—A warehouseman does not lose his lien for charges by failure to insert them in a non-negotiable receipt; and where, after a warehouseman has issued a non-negotiable receipt covering three automobiles and after the automobiles have been in the warehouse for a period of several months, the beneficiary of said receipt requests the warehouseman to reissue separate receipts in the name of a new beneficiary, one for each automobile, and such request is complied with and three non-negotiable receipts, each bearing date of the original receipt, are issued in favor of the new beneficiary, a certain privity is established between the warehouseman and said new beneficiary, but such transaction does not deprive the warehouseman of its lien or of its rights under the original deposit.

[2] ID. — TRANSFER OF RECEIPT — RIGHTS OF TRANSFEREE — CONSTRUCTION OF UNIFORM WAREHOUSE RECEIPT ACT.—Under the Uniform Warehouse Receipt Act, if a receipt is non-negotiable the transferee acquires the right to notify the warehouseman of the transfer to him of the receipt, and he thereby becomes the beneficiary of the direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt; and one to whom a receipt has thus been transferred acquires thereby as against the transferor the title to the goods, subject to the terms of any agreement with the transferor.

[3] ID. — TRANSFER OF NEGOTIABLE RECEIPT — PRIOR EQUITIES. — The transferee of a warehouse receipt may acquire a title to the stored goods which is not subject to equities existing between the transferor and the warehouseman or prior lienholders of the receipt, but to have this result the receipt must be of the negotiable class.

[4] ID. — NEGOTIABLE RECEIPT — RIGHT TO LIEN. — Under the Uniform Warehouse Receipt Act, a warehouseman issuing a negotiable receipt is not entitled to a lien, except for charges subsequent to the date

1. Lien of warehouseman, note, 42 Am. Dec. 257. See, also, 27 R. C. L. 1007.

Construction of Uniform Warehouse Receipts Act, note, Ann. Cas. 1917E, 29. See, also, 27 R. C. L. 966.

2. Warehouse receipts, transfer and negotiability, notes, 84 Am. Dec. 752; 17 Ann. Cas. 670.

of the receipt, unless the receipt expressly enumerates the charges which are claimed to be a lien.

[5] ID. — DELIVERY OF PART OF GOODS — LIEN UPON BALANCE. — The three automobiles having been delivered to the warehouseman under one bailment, the mere delivery of one of the cars without demanding the amount of its lien did not in any way impair its right to a lien upon the remaining cars for the full amount of the charges.

[6] ID. — EXTENT OF CHARGES — WHEN STATEMENT UNNECESSARY — NOTICE.—A warehouseman issuing a non-negotiable receipt which contains a recital that the goods stored are subject to a lien for charges is entitled to a lien to the extent of such charges, even though the amount is not stated in the receipt; and such recital is sufficient to put the assignee upon notice of the warehouseman's lien.

(1) 40 Cyc., p. 425.   (2) 40 Cyc., p. 425.   (3) 40 Cyc., p. 425.
(4) 40 Cyc., p. 425.   (5) 40 Cyc., p. 459.   (6) 40 Cyc., p. 425.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John J. Van Nostrand, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. Joseph Posner, Samuel M. Samter and Goldman, Nye & Surr for Appellants.

Goodfellow, Eells, Moore & Orrick for Respondent.

TYLER, P. J.—Action to recover the sum of $465.20 paid under protest to a warehouseman for storage.

The controversy arose out of the following transaction: In the year 1913 three Cole automobiles were shipped to San Francisco by the Cole Motor Car Company, Peoria, Illinois, the Santa Fe Railway Company being the carrier. The cars were consigned to Cole Motor Company at San Francisco, and the carrier was advised by the consignor to notify the latter company of their arrival. The consignor mailed the bill of lading with draft for purchase price attached to the consignee. The cars arrived, and the bill of lading not being presented to the carrier and the freight not having been paid thereon, the railway company on June 21, 1913, stored them with the defendant company herein, and in accordance with

the established custom such company paid the freight due the carrier and issued its receipt to it. This receipt showed that the machines were stored for the account of the carrier and was marked "non-negotiable." Some five months thereafter and in November, 1913, the consignee, through its representative, one W. G. Davis, obtained from the carrier the warehouse receipt (the draft attached to the bill of lading having in the meantime been taken up). This receipt was thereafter presented to defendant warehouseman by Davis, who requested that company to reissue separate receipts in the name of J. Boas, one for each car. The company complied with this request. Each of the receipts bore date June 21, 1913, the date upon which the cars were originally stored with the company, and they also were marked "non-negotiable." At the time the new receipts were issued Davis knew that the defendant warehouseman had paid the freight charges on the cars in accordance with the custom in San Francisco, and that it was claiming a lien thereon. Boas some time thereafter withdrew one of the cars from storage without defendant claiming its lien thereon for the freight or other charges. Subsequently it was attempted to remove another of the cars, whereupon the defendant demanded the full sum of its freight and storage charges, amounting to the sum of $540.20. The charges so demanded were paid under protest. Thereafter J. Boas brought this suit to recover the amount so paid, less the amount of storage charges accruing after the issuance of the new receipts mentioned. It was his claim in the trial court, and the same contention is here made, that the defendant had no lien for the freight charges or for any storage charges incurred prior to November 3, 1913, when the new receipts above mentioned were issued; in other words, that he was only liable for storage charges in the amount of $75, and that he was compelled to pay a sum in excess of this amount, viz., $465.20, the amount in suit.

After the trial but before the court rendered its decision Boas died, and his executors were duly substituted as plaintiffs in the action. Thereafter judgment was rendered in favor of defendant company, and the plaintiffs appeal.

In support of their appeal it is contended that upon delivery to Boas in his name of the receipt there was a com-

plete novation of the previous contract relation between defendant and the Santa Fe Railway Company, the first bailor of the automobiles, and the rights and obligations arising from such relationship were changed and novated to the new one of depositor and depositary between defendant and Boas, the effect of which was to free the property from any lien for freight and other charges accruing prior thereto.

[1] We fail to see how the transaction in question can possibly amount to a waiver of the defendant's rights under the original deposit. A warehouseman does not lose his lien for charges by failure to fully insert them in a non-negotiable receipt. The purchaser of a non-negotiable instrument is put upon notice that there may be a lien for charges not mentioned therein. There is no question that by the transfer a certain privity was established between the defendant and Boas, but the transaction itself did not deprive defendant company of its lien.

[2] Under the Uniform Warehouse Receipt Act, if a receipt is non-negotiable the transferee acquires the right to notify the warehouseman of the transfer to him of the receipt, and thereby becomes the beneficiary of the direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt. One to whom a receipt has thus been transferred acquires thereby as against the transferor the title to the goods subject to the terms of any agreement with the transferor (Stats. 1909, p. 445). [3] It is true that the transferee of such a receipt may acquire a title to the stored goods which is not subject to equities existing between the transferor and the warehouseman or prior lienholders of the receipt. To have this result, however, the receipt must be of the negotiable class (27 R. C. L., p. 970). [4] In such a case by the direct terms of the act referred to a warehouseman issuing a negotiable receipt is not entitled to a lien except for charges subsequent to the date of the receipt unless the receipt expressly enumerates the charges which are claimed to be a lien (Stats. 1909, p. 442). Here, however, the rights of the parties are bottomed upon and controlled by a non-negotiable receipt. The warehouseman had paid the freight upon the goods and stored them in its warehouse. The transferee had a right upon acquiring title to the stored property to have

a receipt issued in his name. The issuance of this receipt in no manner affected the warehouseman's right to his lien, and there is nothing in the record to show that the parties ever intended that it should have this effect. **[5]** The mere delivery of one of the cars by defendant without demanding the amount of its lien did not in any way impair its right to the full amount of the charges (*Baker* v. *Brown,* 138 Mass. 340). True, the lien of a warehouseman is specific and not general, and while no lien perhaps might arise for a general balance of account, still the warehouseman may deliver a part of the goods stored with him and retain a lien for the whole amount of the charges upon the rest, provided the goods were received under the same bailment. (27 R. C. L., p. 1007.) There can be no question that the parties never intended by their acts to relieve the goods from the lien. Davis had full knowledge of the charge, but, irrespective of any question of agency, the mere fact that the cars were in storage was a sufficient circumstance to put Boas upon notice. **[6]** A warehouseman issuing a non-negotiable receipt which contains, as here, a recital that the goods stored are subject to a lien for charges is entitled to a lien to the extent of such charges, even though the amount is not stated in the receipt (*Western Bank* v. *Marion Distilling Co.,* 89 Ky. 91 [5 S. W. 458], and such recital is sufficient to put the assignee upon notice of the warehouseman's lien (*Security Bank* v. *Minneapolis Cold Storage Co.,* 55 Minn. 101 [56 N. W. 582]). Then, too, the receipts were antedated as of the time when the property was originally stored, and were identified in terms with the original receipt. These are circumstances which indicate that the new receipts were issued in compliance with the law and not with any intention to create a new contract. The effect of the transaction in so far as the rights of the defendant are concerned amounted to no more than an assignment of the receipts, and defendant's lien was in no manner affected thereby.

The judgment is affirmed.

Knight, J., and St. Sure, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 15, 1924.