SCHWAB et al. v. OATMAN et al.

(Supreme Court, Appellate Division, First Department. December 18, 1908.)

1. Sales (§ 214*)—Transfer of Title—Goods to be Manufactured.

Title did not pass at the time of sale, where the goods were not then in existence, but were to be manufactured.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 571; Dec. Dig. § 214.*]

2. Sales (§ 214*)—Transfer of Title—Assignment of Right to Receive Payment.

B. sold plaintiffs goods to be afterward manufactured by the mills; the course of business between B. and plaintiff being that, upon receipt of invoices from the mills for the manufactured goods when shipped, B. would invoice them to plaintiffs and assign the right to receive payment to a bank for advances made, sending it a duplicate invoice, the invoice to plaintiffs stating that payment was to be made to the assignee, and the latter also notifying plaintiff thereof. In June B. sent a load of goods, shipped under this arrangement, to plaintiffs, who stated that they could not store them and requested that they be kept until plaintiffs could receive them, to which B. said he would have to charge storage, which plaintiffs replied they were not bound to pay. Without further discussion B. stored the goods with defendant, and thereafter, in July, pledged the goods to defendant for advances. *Held*, that the tender of the goods to plaintiffs did not affect the title thereto, but whatever title B. had passed to the bank, when B. assigned to them the right to receive payment, so as to enable it to complete plaintiff's title upon payment; B. holding the goods thereafter only as bailee, so that his subsequent pledge of the goods to defendant was ineffectual.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 214.*]

3. Pledges (§ 6*)—Title of Pledgor—Right to Pledge Goods.

One holding goods as bailee had no authority to pledge them for his own benefit, and a pledge thereof was ineffective as against the owner or his vendee.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 16; Dec. Dig. § 6.*]

4. Assignments (§ 93*)—Buyer's Liability to Third Persons—Assignee of Seller.

Where the seller of goods assigned the right to receive payment to another in consideration of advances, with notice to the buyer, the latter was liable to the assignee for the price.

[Ed. Note.—For other cases, see Assignments, Dec. Dig. § 93.*]

5. Pledges (§ 24*)—Equitable Estoppel—Elements—Representations and Reliance Thereon.

Where, after goods were invoiced to the buyer and the seller assigned his right to receive payment, the seller retaining the goods as bailee, neither the assignee nor buyer invested the seller with apparent title, or made any representations to a subsequent pledgee of the seller nor did any act upon which he relied, they were not estopped from denying the validity of the pledge.

[Ed. Note.—For other cases, see Pledges, Dec. Dig. § 24.*]

6. Factors (§ 60*)—Protection Under Factors Act—Persons Within Statute.

Where defendant simply held goods in storage for a bailee, who had mere possession, and was not a factor or agent of the owner, and did not have any bill of lading, custom house permit, or warehouseman's receipt, he could not claim protection under the factors act (Laws 1830, p. 203, c. 179) for advances made to the bailee.

[Ed. Note.—For other cases, see Factors, Cent. Dig. § 91; Dec. Dig. § 60.*]

McLaughlin and Houghton, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Samuel M. Schwab, Jr., and another against Frederic A. Oatman and another. From a judgment for plaintiffs (56 Misc. Rep. 393, 106 N. Y. Supp. 741), defendants appealed. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, McLAUGHLIN, and HOUGHTON, JJ.

John P. Elder, for appellants.
Frederick F. Neuman, for respondents.

INGRAHAM, J. The facts in this case are not seriously disputed. Plaintiffs are engaged as manufacturers and merchants in the city of New York, and defendants are engaged in conducting a warehouse in said city. During the year 1893 a domestic corporation known as the James Freeman Brown Company were engaged in business in such city as the selling agents for mills who were manufacturers of cotton goods in the United States. On March 28, 1903, the James Freeman Brown Company sold to the plaintiffs 50,000 yards of cotton duck and delivered to them a memorandum describing the goods as the brand "Carson"; the description of the goods as "37½–2.45 yard duck"; quantity, "50,000 yards"; and price "6½ cents per yard," providing the terms were cash 10 days less 3 per cent., or 2 per cent. 10 days, 60 extra; goods to be delivered, "5,000 yards promptly, balance about April 1, 1903," and to be shipped "first 5,000 yds. to Aspincook Co., Jewett City, Conn." It was also stated that a memorandum of the sale was sent to a mill in which the words "sold for" were substituted for the words "sold to" in the contract sent to the plaintiffs, and the words "we have sold the above for your account" substituted in place of the words "we record your order as above same to be mutually binding" in the contract sent to the plaintiffs. There was also a difference in the time of payment, "2 off 10 days" being substituted for "cash 10 days less 3 per cent." Subsequently, and on April 20th, the James Freeman Brown Company sent an invoice to the plaintiffs which stated that the 5,000 yards had been shipped to Jewett City, Conn., as required in the memorandum of sale, and for that the plaintiffs paid the James Freeman Brown Company's assignee on June 27, 1903. Subsequently invoices for the balance of the 50,000 yards were sent to the plaintiffs at various times between June 13th and July 18th, the statement in these invoices being that the merchandise had been shipped to New York, and for these various invoices as the bills came due under the contract the plaintiffs paid the James Freeman Brown Company's assignees or pledgees. When the goods arrived in New York they were stored in the warehouse of the defendant company, and thereafter the James Freeman Brown Company obtained advances from the defendant company upon the faith of this merchandise amounting to $2,599.45. The defendants acted in good faith, took from the James Freeman Brown Company promissory notes specifying the merchandise as security for their payment, and without notice of any claim of the plaintiffs to the merchandise. These advances by the defendant were made prior to the time that the plaintiff paid for the merchandise. The action was in replevin to recover the possession of

this merchandise, and the court has found that title to the goods passed prior to the 19th of December, 1903.

It seems that the advances that were made by the defendants to the James Freeman Brown Company were made on July 6 and July 11, 1903, and that James Freeman Brown Company subsequently paid to the mills the price for this merchandise. The payments made by the plaintiffs for the merchandise were made in August and September; the last payment apparently having been made on September 26, 1903. It appeared from the evidence that in the latter part of June, 1903, the James Freeman Brown Company sent a truck load of bales of the merchandise sold under this contract to the plaintiffs' establishment in White street, that the plaintiffs told them that they could not then take the goods on account of lacking storage space, and that the truckman should deliver them to the Brown Company to keep them in their place for the plaintiffs. On the same day the plaintiffs telephoned to the representative of the Brown Company, stating that the plaintiffs had not space to store the merchandise and that the company should keep it in its place for the plaintiffs. Subsequently at an interview with the representatives of the Brown Company the plaintiff said that the company would have to keep the merchandise for them; that the Brown Company's representative said that it would have to charge the plaintiffs storage, which plaintiffs said they were not bound to pay; and that was the end of the conversation. One of the plaintiffs testified that it was the custom in the business for the sellers to keep the goods until delivery is ordered by the purchasers; that these cotton goods were bought on contract, and the sellers or the mill agents held them until the purchasers notify them where they are to be shipped. These bales all appear to have been marked with the number of the bale, which correspond with various invoices sent by the Brown Company to the plaintiffs and for which the plaintiffs paid. The Brown Company were adjudged bankrupts about the 10th of December, 1903, and on December 16 and 17, 1903, the goods were located in defendants' warehouse, when plaintiffs demanded them, at the same time offering to pay the storage on the merchandise. Defendants refused to accept the storage charges, and demanded the amount of their advances, which plaintiffs refused to pay, whereupon this action was commenced.

The substantial question in this case is whether the Brown Company had title to this merchandise when the loan was made by the defendants upon the merchandise. It is quite clear that no title passed by the original sale, for the merchandise was not then in existence, as it had to be manufactured. The sale was in form made by the Brown Company, and there was an executory contract to manufacture and sell this merchandise. The Brown Company had acted, in its relations to the plaintiff in regard to this sale of the merchandise, as the undisclosed principal of the mills, who accepted the order to manufacture the merchandise. The Brown Company was described in the memorandum note as the agent of the mills. It made a contract to sell to the plaintiffs certain merchandise to be manufactured. It gave the order to the mills, who accepted it, and, when manufactured, shipped the merchandise to the Brown Company in compliance with the con-

tract, and immediately upon the receipt of the invoices from the mills it invoiced the manufactured merchandise to the plaintiffs, transferred the right to receive the payment for the merchandise to the bankers, and subsequently the plaintiffs paid the bankers the contract price. It is doubtful whether any title to these manufactured articles ever vested in the Brown Company, or that it was anything more than the agent of the mills to receive and deliver the manufactured articles to the purchaser. In the invoices sent to the plaintiffs it was stated that the payment was to be made to the assignees, and on the same day duplicate invoices were sent to the assignees, who at once gave notice to the plaintiffs and made the advances to the Brown Company. The arrangement between the Brown Company and the assignees was testified to by the representative of Ladenberg, Thalman & Co. It was that Ladenberg, Thalman & Co. received the invoices from the Brown Company on the same or the following day as the itemized invoice was sent to the customer, and the assignees made the advances to the Brown Company the day that this invoice was received to them. The identical merchandise sold to the plaintiff was identified by these invoices, and it was then or shortly afterwards in the possession of the Brown Company. I think the effect of this transaction was to identify the merchandise then in the possession of the Brown Company, or as having been shipped to it by the manufacturers as the particular merchandise that had been sold to the plaintiffs, and there was then transferred to the bankers, who had made the advances, the right of the Brown Company to the goods, so as to enable the bankers to complete the title of the plaintiffs to the goods upon payment of the purchase price. Clearly the Brown Company had no further interest in the merchandise sold. They contracted to sell the merchandise to the plaintiff. It was in their possession or under their control for the purpose of delivery. It was to be paid for by the purchasers within a time fixed by the contract, and the purchasers then became liable to the Brown Company, or to the mill who had manufactured it, for the purchase price. The Brown Company then transferred to the bankers the right to receive payments, and necessarily whatever title remained to the goods with the Brown Company was transferred to the bankers, to enable them to assure to the purchasers a complete title upon payment of the purchase price. The Brown Company then held the merchandise as simple bailee, without authority to sell or pledge it, and the subsequent pledge to the defendants was therefore ineffective.

It is not necessary to determine whether the title to the merchandise vested in the plaintiffs at the time of their receipt of the invoices, or at the time of the final payment to the bankers. It is sufficient to say that the Brown Company had lost title to the merchandise before they attempted to pledge it to the defendants. Under this arrangement, if the goods had been delivered by the Brown Company to the plaintiffs, there would then have been a legal liability in favor of the bankers and against the plaintiffs to pay the purchase price of the merchandise (Thalmann v. Capron Knitting Co., 100 App. Div. 247, 91 N. Y. Supp. 520, affirmed 182 N. Y. 525, 74 N. E. 1126); and it seems to me quite evident that under the contract with the plaintiffs and the

contract with the bankers the Brown Company had lost, not only the title to the merchandise, but any interest in them, except to hold them under a naked bailment for the benefit of the plaintiffs to whom they had sold the merchandise and the bankers to whom they had sold the right to receive the purchase price. See Saltus v. Everett, 20 Wend. 267, 32 Am. Dec. 541; Kimberly v. Patchin, 19 N. Y. 330, 75 Am. Dec. 334.

There is no question of estoppel presented, as neither the plaintiffs nor the bankers invested the Brown Company with an apparent title, or made any representation or did any act as to the title of the Brown Company to the property upon which the defendant relied. Barnard v Campbell, 55 N. Y. 462, 14 Am. Rep. 289; Collins v. Ralli, 20 Hun, 246, affirmed 85 N. Y. 637. I do not consider that a tender of a portion of this merchandise to the plaintiffs at the end of June has any effect upon the title to the property. It does not appear what merchandise was tendered, or whether they were included within those invoiced to the plaintiffs prior to that time; but the only question that was then involved was whether the plaintiffs were bound to receive the merchandise, or whether it was the duty of the Brown Company to care for them, and charge the plaintiffs with the expense of caring for them until shipping orders had been received. The refusal of the plaintiffs was not a denial of title, or a refusal to accept the merchandise as a compliance with the contract, or which in any way involved the title to the merchandise, but was the result of a dispute in relation to the question of possession. The Brown Company apparently acquiesced in the demand of the plaintiffs, except in relation to the liability for charges for storage, and when the Brown Company subsequently stored the merchandise in the defendants' storehouse it had complied with its contract, and the plaintiffs could not then have obtained possession of the merchandise without paying the storage charges; but all this was without effect upon the question of title, which had been divested by the Brown Company's delivery of the invoice to the plaintiffs and a transfer of the right to collect the purchase price to the bankers.

The appellant also claims protection under the factors act (chapter 179, p. 203, Laws 1830); but it seems to me clear that the defendants cannot claim a lien under that act, for the defendant was not a factor or agent of the plaintiffs, and so far as appears was not intrusted with the possession of any bill of lading, custom house permit, or warehouse keeper's receipt for the delivery of this merchandise. All that the Brown Company had was the simple possession of the merchandise, and that was not sufficient under the act to protect a person dealing with it.

My conclusion, therefore, is that the judgment was right, and it should be affirmed.

Judgment affirmed, with costs.

PATTERSON, P. J., and CLARKE, J., concur.

McLAUGHLIN, J. (dissenting). I dissent. On the 28th of March, 1903, the plaintiffs entered into a written contract with the James

Freeman Brown Company for the purchase from it of 50,000 yards of duck, the first 5,000 yards to be delivered at once and the balance about April 15th following. The goods at the time the contract was made had not been manufactured. The Brown Company, however, immediately thereafter had the same manufactured by a third party, and with its own money paid therefor. In pursuance of the contract they delivered to the plaintiffs the first 5,000 yards, and subsequent to April 15th offered to deliver the balance, which the plaintiffs refused to receive, though frequently requested to do so. After such request and refusal, they delivered the same to the defendants, to be stored in their warehouse, representing that they were the sole owners of the same, and there was nothing upon the merchandise when delivered indicating that any other person had any interest therein. After the merchandise had been thus stored with the defendants, they loaned to the Brown Company certain sums of money, taking the merchandise as security for the payment of the same, and they did not then know that any one claimed an interest in such merchandise other than the Brown Company. At the time these loans were made the plaintiffs had not paid the Brown Company for the merchandise pledged with the defendants. Under such circumstances I do not see how the plaintiffs can maintain an action of replevin.

The question presented necessarily depends upon where the title to the merchandise was when the defendants made the loans to the Brown Company. It was somewhere, not in theory, but in fact. Certainly the plaintiffs did not obtain title by their contract with the Brown Company, because the merchandise was not then in existence. The same was thereafter manufactured for and delivered to the Brown Company, and it with its own money paid for the same. When the delivery was thus made, the title passed to it, and it there remained until it passed either to the plaintiffs or defendants. It could not pass to the plaintiffs until delivery had been made to them or they had paid the Brown Company the contract price. The merchandise in question was never delivered to the plaintiffs, because they refused to receive the same; and at the time the defendants received it for storage in their warehouse, and thereafter loaned money upon the strength of that security, the plaintiffs had not paid the Brown Company for such merchandise or any part of it. The title, therefore, must have have been at that time in the Brown Company; and, if this be true, then that title passed to the defendants as security for the loans which they made.

It is suggested in the prevailing opinion that it is doubtful whether any title to the merchandise ever vested in the Brown Company, or that it was anything more than the agent of the mills to receive and deliver the manufactured article to the purchaser. In view of the conceded facts and findings, I am unable to discover any basis for such doubt. The Brown Company, for the purpose of carrying out its contract with the plaintiffs, procured the merchandise to be manufactured and paid for it; and, when the same was delivered to it, that moment, as already indicated, the title passed to it. It is true the Brown Company was designated on the invoices as "mills' selling agents"; but it, and no one else, contracted with the plaintiffs. It is perfectly obvious

that the manufacturer of this merchandise could not have enforced any contract with the plaintiffs, because no such contract was in existence. It is also equally obvious that the bankers, Ladenburg, Thalman & Co., never had title to the merchandise. They made advances to the Brown Company on the accounts collectible from the plaintiffs, which were assigned to them, the duplicate invoices being sent them as evidence of such accounts; but they never acquired any title to the goods by reason thereof.

It is also said, when the invoices were sent to the plaintiffs, this was an appropriation of the merchandise therein specified, and that title then passed to them, or, in any event, when they had made the final payments thereon to the bankers. But suppose that after such final payment had been made, and while the merchandise was in the possession of the Brown Company, the same had been destroyed by fire without the fault of either party; would the plaintiffs be compelled to bear the loss? It seems to me not, for the reason that the title would still be in the Brown Company. This fact seems to have been recognized in the invoices, because each contained the statement: "Goods at buyer's risk when shipped." Until that time they were at the risk of the seller.

The question is not whether there was such an appropriation of the goods as would have enabled the plaintiffs to maintain an action of replevin against the Brown Company, but whether the plaintiffs have shown such a title as enables them to recover from the hands of a concededly innocent third party, which made advances thereon, relying on the apparent ownership of the Brown Company. I do not think they have, and for that reason it seems to me the judgment should be reversed, and a new trial ordered, with costs to appellants to abide event.

HOUGHTON, J., concurs.