THE CHEMICAL NATIONAL BANK OF NEW YORK, Plaintiff, *v.* NEW YORK DOCK COMPANY, Defendant.

First Department, November 3, 1922.

Liens — warehouseman's lien — letter of credit granted on agreement that bank should have title to goods until paid for by purchaser — bank paid draft and received negotiable shipping documents — property delivered to purchaser for storage and sale as bank's property — title to goods was in bank — warehouseman had no lien thereon for charges for storage of other goods — General Business Law, §§ 112, 113, construed.

The plaintiff granted a letter of credit to a purchaser under an agreement by which the plaintiff was to become the owner and have the right of possession and disposal of the goods shipped to the purchaser until he paid for the same. Thereafter the plaintiff paid a draft presented to it and received negotiable shipping documents for the goods in question and, in pursuance of the agreement on which the letter of credit was granted, the plaintiff delivered the goods to the purchaser in trust for the purpose of storage or sale and received from the purchaser a trust receipt reciting that the goods belonged to the plaintiff. The purchaser stored the goods in defendant's warehouse without stating the nature of its title, and after the bankruptcy of the purchaser had intervened, the plaintiff demanded possession of the goods from the defendant on the presentation of the warehouse receipt duly indorsed by the purchaser and an order upon the defendant to deliver the goods to the plaintiff but the defendant refused to deliver the goods unless the plaintiff would pay a claim against the purchaser for the storage of other goods, asserting that it held a lien on the goods in question to cover the prior charges.

*Held,* that the title to the goods was at all times in the plaintiff and that the defendant did not have a lien either at common law or by virtue of sections 112 and 113 of the General Business Law against said goods to cover the indebtedness against the purchaser for storage charges of the other goods.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Roosevelt, Kobbé & Thatcher* [*George L. Kobbé* of counsel], for the plaintiff.

*Davies, Auerbach & Cornell* [*Martin A. Schenck* of counsel; *Charles E. Hotchkiss* with him on the brief], for the defendant.

GREENBAUM, J.:

The submission involves the assertion of a lien by the defendant warehouseman upon merchandise, which belonged to the plaintiff bank, for storage charges upon other merchandise not belonging to and not stored by or in behalf of the plaintiff.

The facts are that the Republic Trading Company, doing business in New York city, applied to the Chemical National Bank for a commercial credit. The application and the terms of the agreement are embodied in one instrument signed by the trading company and accepted by the bank which issued its letter of credit pursuant to and in conformity with the provisions of the application. The credit was established for the account of the trading company, in favor of B. M. McGrath & Sons of St. Johns, N. F., enabling B. M. McGrath & Sons to draw a sight draft upon the bank for the full invoice value of fifty cases of lobsters which they accordingly shipped from St. Johns to New York. The draft was presented to and paid by the bank and the negotiable shipping documents, evidencing title to the merchandise, were duly assigned and delivered to the bank in accordance with the agreement. The bank having fully paid for the merchandise made due demand upon the trading company for repayment but the latter having meanwhile been adjudged a bankrupt never paid anything whatever on account of the transaction. The agreement in express terms recognizes and admits the bank's ownership and its right to the possession and disposal of the merchandise and the proceeds thereof until paid for by the trading company and it also provides that in the event the bank shall intrust the merchandise to the trading company " for the purpose of sale or otherwise," the latter will execute a receipt in such form as the bank may require, and that the trading company " consent that the right of repossession may be exercised at your [the bank's] discretion."

The merchandise having been paid for by the bank, and the trading company having paid nothing, the bank intrusted the merchandise to the trading company for the purpose of enabling the latter to store it as the bank's property and to effect a sale and account to the bank for the proceeds and the trading company thereupon executed a so-called trust receipt, which recites that the trading company is to hold the merchandise in storage as the property of the bank, with liberty to sell it for the plaintiff's account and to turn over the proceeds to it and provides unconditionally that the plaintiff may at any time cancel the so-called trust and take possession of the merchandise.

The trading company thereupon stored the property with the defendant dock company without disclosing the plaintiff's owner-

ship and received therefor from the dock company a non-negotiable warehouse receipt.

When the trading company was adjudged a bankrupt, the bank canceled the so-called trust, and in exercise of its rights of repossession received the warehouse receipt duly indorsed by the trading company with an order upon the defendant to deliver the merchandise to the bank. To obviate any question as to the necessity of joining the trading company or its receiver in this controversy, the bank, with the knowledge and consent of the defendant, the dock company, obtained an order from Judge HAND in the bankruptcy proceeding, which ordered and adjudged that neither the trading company nor its receiver had any interest in and to the said merchandise, and that the dock company might deliver the same to the bank, so far as the trading company and receiver were concerned.

The bank tendered to the dock company the warehouse receipt indorsed with the order for delivery and tendered the amount of the dock company's labor, storage and other charges in respect of the merchandise and demanded the delivery of the merchandise.

Delivery was refused by the dock company upon the sole ground that it had a lien upon the merchandise for the satisfaction of an indebtedness owing to it by the trading company, which indebtedness had been incurred by the trading company for warehouseman's charges in respect of other goods, which had been stored and removed by the trading company prior to the time that the bank's merchandise was placed in storage.

To avoid unnecessary loss, the parties agreed that the merchandise should be sold by the bank without waiver of the dock company's claim and that out of the proceeds of sale the sum of $1,362.20 (the amount owing by the trading company to the dock company for the storage of the other goods) should be held in escrow to be delivered in accordance with a judicial determination of the controversy. The bank paid all the dock company's charges for the storage of this particular merchandise. The merchandise was thereafter sold for less than the bank had paid for it, and out of the proceeds the said sum of $1,362.20 was deposited in escrow. If the judgment asked for by the plaintiff is given, that sum is to be turned over to the plaintiff in satisfaction of the judgment; and if the judgment asked for by the defendant is given, it is to be turned over to the defendant as the defendant's property.

The bank contends that, within the meaning of the statutes defining the warehouseman's lien, the trading company was merely intrusted with the merchandise as the bank's agent for the purpose of storage and sale; and that the defendant warehouseman could

not acquire in derogation of the rights of the true owner any lien upon or interest in property so stored by the agent, to secure any antecedent indebtedness due from the agent to the warehouseman, or for any advances or charges which were not made or earned by the warehouseman upon the faith of the agent's apparent ownership of the property.

Upon the foregoing facts the defendant claims a general lien against the goods, claiming that they belonged to the Republic Trading Company, the debtor, for the claims in regard to which such lien is asserted.

Defendant contends that the question of title arises not as between the parties to the credit agreement and trust receipt, but as between one of those parties and a stranger.

The General Business Law in regard to warehousemen provides:

" § 112.  What claims are included in the warehouseman's lien.  Subject to the provisions of section one hundred and fifteen, a warehouseman shall have a lien on goods deposited or on the proceeds thereof in his hands, for all lawful charges for storage and preservation of the goods; also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering and other charges and expenses in relation to such goods; also for all reasonable charges and expenses for notice, and advertisements of sale, and for sale of the goods where default has been made in satisfying the warehouseman's lien.

" § 113.  Against what property the lien may be enforced.  Subject to the provisions of section one hundred and fifteen, a warehouseman's lien may be enforced:

" (a) Against all goods, whenever deposited, belonging to the person who is liable as debtor for the claims in regard to which the lien is asserted, and

" (b) Against all goods belonging to others which have been deposited at any time by the person who is liable as debtor for the claims in regard to which the lien is asserted, if such person had been so intrusted with the possession of the goods that a pledge of the same by him at the time of the deposit to one who took the goods in good faith for value would have been valid."

In *Century Throwing Co.* v. *Muller* (197 Fed. Rep. 252) the bankers (plaintiffs), under a much less explicit credit agreement, accepted a draft for the purchase price of raw silk, taking the bill of lading, and then permitting the silk company, for which the importation was made, to take the goods under a trust receipt which in its language is quite identical to the trust receipt in the case at bar.  The silk company delivered them to the defendant throwing company for " throwing," without disclosing the banker's

ownership, actually agreeing in terms that the thrower's lien upon them should cover an indebtedness of the silk company. The court sustained the title of the banker, and held that the throwing company had no such lien against the goods, being limited to its lien for throwing these particular goods.

The court says (pp. 259, 261): " There is no doubt at all that the understanding of the parties, as evidenced by what they did, the documents passing between them, the evident purpose of the transaction and the well understood commercial custom above referred to, was that the title to the goods in question should pass from the vendor directly to the plaintiffs [the bankers, defendants in error], and should there remain for his protection until the payment had been made for the invoices by the silk company. That this is the law of the contract we are here considering, is well stated by the Court of Appeals of the great commercial State of New York in the leading case of *Moors* v. *Kidder et al.*, 106 N. Y. 32, 40; 12 N. E. Rep. 818. Referring to the earlier case of *Farmers & Mechanics' Nat. Bank* v. *Logan*, 74 N. Y. 568, the court says: ' The doctrine stated was, in substance, that where a commercial correspondent, however set in motion by a principal for whom he acts, advances his own money or credit for the purchase of property and takes the bill of lading in his own name, looking to such property as the reliable and safe means of reimbursement up to the amount when the original principal shall pay the purchase price, he becomes the owner of the property instead of its pledgee, and his relation to the original mover in the transaction is that of an owner under a contract to sell and deliver when the purchase price is paid.' * * * Where the real nature of the transaction under which the banker's credit is advanced for the purchase of goods on another's account is apparent, courts will sustain the title and property of the banker as security for his advances, even where the goods have been allowed to go into the possession of the one upon whose account they were purchased, though no trust receipt, as in this case, or other document, specifically stated the agreement upon which they were so delivered. Such a case was that of *Farmers' Bank* v. *Logan, supra,* where there was no trust receipt or no letter of credit or letter of obligation, but upon the advances made by the bank and the nature of the transaction the court sustained the bank's title."

In the case under review the credit agreement and trust receipt in express terms provided that ownership shall remain in the bank and contain nothing whatever suggesting the right of the trading company to pledge the goods.

In *Matter of Cattus* (183 Fed. Rep. 735) the trust receipt con-

tained clauses some of which described the right of the banker in the goods as property or title, and others as a lien. The court, nevertheless, held: " The purpose of the parties, describe the trust receipt as you will, was to keep the title to the goods in the bankers until their acceptances for the price of the goods were paid. The courts, without always defining exactly what the relation between the parties is or always defining it in the same way, still are astute to protect the rights of the banker in such case." To the same effect is *Vaughan* v. *Massachusetts Hide Corporation* (209 Fed. Rep. 667).

We can find nothing in the General Business Law which would warrant the defendant's interpretation as to liens of warehousemen. Indeed, there seems to be no reason why the warehouseman should be protected beyond the right to recover storage and other charges incurred by reason of the deposit of the specific goods belonging to the bank. Letters of credit issued by banks form a large and important factor in important commercial transactions of the community. To adopt the strained rule urged by the defendant would make the issuance of letters of credit of the kind herein described a very precarious kind of business. There should be judgment for the plaintiff, without costs.

CLARKE, P. J., DOWLING, PAGE and FINCH, JJ., concur.

Judgment ordered for plaintiff. Settle order on notice.