WILLIAM J. LUTES, Appellant, *v.* SOL A. SHENK, Doing Business as SHENCO SALES COMPANY, et al., Respondents, and GOAL CREDIT CORPORATION, Third-Party Claimant-Respondent.

First Department, February 15, 1955.

*Samuel Bierman* for appellant.

*Harry Fogler* for respondents.

*Joel Dolkart* for third-party claimant-respondent.

RABIN, J. Plaintiff obtained a warrant of attachment and on October 28, 1953, had the Sheriff levy upon a shipment of automotive parts purchased abroad and claimed by the plaintiff to be owned by the defendants. The documents of title to the property were at first held by the bank which financed the purchase but prior to the levy the bank assigned them to respondent Goal Credit Corporation the latter having refinanced the transaction by advancing the sum of $60,000. The value of the property unquestionably was far in excess of that amount. On October 30, 1953, the Sheriff served a certified copy of the warrant on Goal. On December 1, 1953, Goal moved at Special Term for an order directing the Sheriff to deliver the attached property to it on the ground that it had title thereto. Determination of the motion was held in abeyance pending a trial of the issue of title which has now been concluded, the Special Referee finding in his decision of April 6, 1954, that Goal had absolute title. But prior to that time, and on December 14, 1953, defendants posted a bond in the sum of $80,000, pursuant to sections 952 and 953 of the Civil Practice Act, and obtained an order discharging the attachment and releasing all property levied upon by the Sheriff.

Based upon the finding of the Special Referee that title to the property was in Goal an order was made at Special Term on May 18, 1954, which (1) granted the motion to direct the Sheriff to deliver the property to Goal, (2) vacated the warrant of attachment dated October 27, 1953, and (3) vacated and cancelled the $80,000 bond posted by defendants on the discharge of the warrant. It is from this order that the plaintiff appeals.

This appeal raises as a first question the propriety of the provision canceling defendants' bond. Initially it should be noted that the bond which was cancelled was not a third-party claimant bond. Had such a bond been given by the claimant Goal its cancellation would have been in order once title was found to be in Goal. But no bond was ever given by Goal. The bond which the lower court cancelled was the one furnished by defendants in order to secure a discharge of the warrant and a release of all property levied upon by the Sheriff. The condition of that bond was that defendants, "will, on demand, pay to the plaintiff the amount of any judgment which may be recovered in the action * * * not exceeding the sum of Eighty Thousand and 00/100 Dollars ($80,000), with interest and costs."

It would seem clear that defendants thus obligated themselves unconditionally to pay any judgment not exceeding $80,000 which might be subsequently obtained against them by plaintiff in the action in which they, as a prerequisite to obtaining a discharge of the warrant, had personally appeared. Defendants' promise to pay such judgment was something more than a mere security for the property attached. In *Baugh & Sons Co.* v. *United States Fidelity & Guar. Co.* (239 App. Div. 731, affd. 265 N. Y. 486), where it was held that a bond such as that given by defendants is an undertaking for the payment absolute of any judgment, the language quoted at page 733 from the case of *Carpenter* v. *Turrell* (100 Mass. 450, 452), is particularly appropriate: " ' The plaintiffs contend that the bond is a mere substitute for the attachment, and therefore that it should stand in all respects as its precise equivalent. But such is not the purport of the bond, nor the intention of the statute which authorizes it to be given. It does not merely restore the possession of the property to the debtor subject to the attachment; it dissolves the attachment utterly. It is not given for the property itself, nor as security for its value; but for the payment absolutely of the judgment when recovered in the suit, whatever may be its amount. It is, in many respects, a higher and better security for the creditor than the attachment. It is not liable to be discharged by the insolvency or death of the debtor; nor by any facts which might dissolve the attachment without defeating the suit.' "

The bond posted by defendants pursuant to sections 952 and 953 of the Civil Practice Act is to be distinguished from a third-person claimant bond which is filed under section 927. The latter bond does not undertake **to pay** any judgment obtained in

the action but its condition is that the claimant will establish that he and not the defendant is the owner of the property. In contrast, the bond given by defendants was an unconditional promise to pay any judgment in the action not in excess of $80,000. There was no compulsion on defendants to give such a bond but having elected to do so, and having had the resulting benefit of a discharge of the warrant and a release of all property levied upon, they may not avoid their obligation. Defendants' undertaking to pay the judgment is what plaintiff received in return for the discharge of the warrant and the release of all levies thereunder.

The discharge of the warrant by the filing of the bond deprived plaintiff of substantial rights, one of which was to retain its levy against whatever interest defendants had in the property. As heretofore indicated, in addition to plaintiff's levy on the automotive parts a certified copy of the warrant of attachment was served upon Goal Credit Corporation. It would seem that such service was effective to attach whatever interest defendants had in the property over and above the amount due to Goal, for section 917 of the Civil Practice Act provides (subd. 2), " A levy made by service of a certified copy of a warrant of attachment shall apply to any and all property of the defendant or debt owing to him, or to any *interest* of the defendant therein or thereto " (emphasis ours). While the law of this State is clear that an interest which is purely contingent is not attachable (*Sheehy* v. *Madison Square Garden Corp.*, 266 N. Y. 44), the interest which defendants had in the automotive parts would not seem to fall within the proscription of that rule for it may be fairly said that defendants had something more than a purely contingent interest in the property. By paying the balance of their indebtedness to Goal ($60,000) defendants could immediately get from Goal a release of their property admittedly worth a sum in excess of $100,000. That surely was an existent substantial interest. There is no reason why that interest should not be subject to attachment. Accepting the finding that Goal had absolute title and that the relationship was not that of pledgor and pledgee, nevertheless, for the purpose of determining whether defendants had an attachable interest, we think the cases holding that the equity of a pledgor is a property right subject to attachment are applicable to this case (see *Warner* v. *Fourth Nat. Bank,* 115 N. Y. 251, and *Simpson* v. *Jersey City Contr. Co.,* 165 N. Y. 193, 197). Insofar as the interest of a pledgor or debtor is concerned, there is a similarity in the two situations. The pledgee must account to the pledgor for property remaining

after payment of the obligation. A like obligation rested in Goal to account to defendants. We hold therefore that service upon Goal of a certified copy of the warrant was a levy, not on a purely contingent interest, but on an existing property right of the defendants. To hold otherwise would be in effect to say that one who is being financed has no interest in a property regardless of how high its value or how small the amount remaining to be paid.

And this attachment against the defendants' interest in the property would have remained standing had it not been discharged by the filing of the bond even though Goal's title to the property be sustained.

There is no conflict between the Special Referee's determination as to title and our holding that defendants had an attachable interest in the property. He neither passed upon nor considered the question as to defendants' interest. All he decided was that Goal had legal title to the property attached. Although the Special Referee's decision on title might appear to be academic in view of the fact that the property was released as a result of defendants' securing a discharge of the warrant, nevertheless we hold the view that the determination made by the Special Referee was correct. The proof before him showed that all of the documents or muniments of title to the property were held by Goal and that the arrangement between the parties was the usual one followed in commercial transactions, namely that title would remain in the party advancing the money until the debtor's obligation would be fully paid. The Special Referee's conclusion is fully supported by the decisions (*Moors* v. *Kidder,* 106 N. Y. 32, 40; *Farmers & Mechanics' Nat. Bank of Buffalo* v. *Logan,* 74 N. Y. 568, 577–578; *Chemical Nat. Bank of N. Y.* v. *New York Dock Co.,* 203 App. Div. 108, affd. 236 N. Y. 560).

Even assuming that there was no effective attachment of defendants' interest in the property the dissolution of the warrant by the discharge order entered upon the filing of the bond, deprived the plaintiff of another right, i.e., the right to levy on any other property of the defendants that might be found (Civ. Prac. Act, § 912). It seems reasonable to assume that the very purpose of the discharge bond was to protect the plaintiff in return for the lifting of the warrant and all levies thereunder and that the condition or consideration therefor was the absolute promise of the defendants to pay the judgment that might later be obtained against them. We conclude therefore that the bond given by defendants should not have been cancelled.

Another point requiring consideration is with respect to the provision in Special Term's order which vacated the original warrant of attachment. The necessity for including that provision in the order is not apparent since the warrant had previously been discharged by the order entered upon the filing of the bond. Besides there was no motion granted nor in fact was any motion made, to vacate the warrant on the ground that it was improperly issued either because of a defect in the papers on which it was granted or for any other recognized reason. Nor could the warrant be vacated because of a faulty attachment resulting in the failure of jurisdiction in the light of the fact that defendants had personally appeared in the action in order to secure a discharge of the warrant.

In the circumstances the order of Special Term should be modified by eliminating therefrom the provision vacating and setting aside the warrant of attachment dated October 27, 1953, the provision vacating and canceling the bond in the sum of $80,000 executed on December 9, 1953, and the provision releasing and discharging the surety thereon.

Order should be modified by eliminating therefrom the provision vacating and setting aside the warrant of attachment dated October 27, 1953, the provision vacating and canceling the bond in the sum of $80,000 executed on December 9, 1953, and the provision releasing and discharging the surety thereon, and as so modified, affirmed, with $20 costs and disbursements to appellant. Settle order on notice.

COHN, J. P., CALLAHAN, BREITEL and BOTEIN, JJ., concur.

Order unanimously modified in accordance with the opinion herein and, as so modified, affirmed, with $20 costs and disbursements to appellant. Settle order. [See *post,* p. 942.]