Francis X. Tucker, S.
The subject of the proceeding before this court is 108 shares of City Service Company stock which according to the records of the said corporation were registered in the name of Anna D. Slover on May 21, 1929. Because of a change in the financial structure of the corporation, at the time •of the commencement of this proceeding these certificates represented 26.8 shares of common stock of the City Service Company, plus accumulated dividends. Anna D. Slover died in 1936 and the petitioner is the administratrix of her estate. Initially this proceeding was commenced as a discovery proceeding and the petition and order to show cause was served on the respondent Gleason B. Speenburgh on March 26, 1958. He filed an answer claiming ownership of the stock, the certificates for which were in his possession, and thereafter obtained an order joining the respondents Sigmund H. Halpern and Blanche J. Halpern as persons with adverse claims to the property in question.
The City Service Company was made a party to the discovery proceeding and in lieu of appearances in this court an affidavit was submitted setting forth the information as to the company’s records pertaining to the stock and attaching copies of correspondence between the respondent Gleason B. Speenburgh and the said corporation with respect to the stock in question.
This controversy grows out of the assignment of the stock certificates as collateral security by Anna D. Slover to the National Ulster .County Bank and Trust Company of Kingston •on September 24, 1931. Notes executed that date list as collateral security 108 shares of City Service Company common •stock and an assignment of a mortgage held by Anna D. Slover. *73 The mortgage referred to was granted by Halpern & Silberman, Inc. to Anna D. Slover and covered property located at Fleischrnanns, New York. The property was occupied by that corporation as a hardware store and the respondent Sigmund H. Halpern had an interest in that corporation. The assignment of the mortgage to the bank by Anna D. Slover was also dated September 24, 1931. Mrs. Slover delivered three stock certificates representing 108 shares of City Service Company and three assignments which were separate instruments. They were undated and entirely blank except for the signature of Mrs. Slover and the witness to the signature.
The mortgagor defaulted on its payments and a judgment of foreclosure and sale was obtained by Mrs. Slover on April 30, 1932. The respondent Sigmund H. Halpern had been named as a defendant in the foreclosure along with the corporation in whose name the title was held. Mr. Halpern was represented in this foreclosure by the respondent Gleason B. Speenburgh and Mrs. Slover was represented by N. Le Van Haver. The parties and their attorneys entered into an agreement on August 30,1932 pursuant to which the judgment of foreclosure and sale was withheld from the record and the respondent Sigmund H. Halpern was permitted to retain possession of the real property upon the making of certain monthly payments to Mr. Haver as attorney for Mrs. Slover.
It further appears that Mrs. Slover was indebted to the firm of A. H. Todd & Son, Inc. in the sum of $396 and on January 31, 1933 as collateral security for this note she assigned a junior interest in this mortgage to that firm. The respondent Gleason B. Speenburgh as a member of the firm of Speenburgh & Speenburgh acted as attorney for A. H. Todd & Son, Inc. in this transaction.
In keeping with the agreement between Sigmund H. Halpern, Anna D. Slover and their respective attorneys, payments were made to Mr. Haver who applied the money to reduce Mrs. Slover’s indebtedness on her notes to the bank and A. H. Todd & Son, Inc. Mr. Halpern fell behind in his payments and Mrs. Slover was unable to meet her obligations on her notes held by the bank and A. iH. Todd & Son, Inc.
In April, 1934 the unpaid balance on the mortgage was in excess of $7,000, the value of the City Service Company stock was approximately $300, Mrs. Slover’s indebtedness to the bank was $1,633.50 on one note and $92.61 on the other, and her indebtedness to A. H. Todd & Son, Inc. was approximately $336. Within a day or two prior to April 27, 1934 Gleason B. Speenburgh appeared at the bank and purchased Mrs. Slover’s notes *74 and claimed the security. There is a factual dispute as to whom the firm of Speenburgh & Speenburgh represented in this transaction in purchasing the notes. Respondent Sigmund H. Halpern claims they were representing him and respondent Gleason B. Speenburgh claims his firm was representing A. H. Todd & Son, Inc. who had the status of junior lienor by virtue of the ■second assignment of the mortgage.
As an outgrowth of the general economic conditions at the time the bank was in receivership and the larger of the two notes was indorsed by an officer of the bank to the trustees who in turn indorsed the note in blank and without recourse. The smaller note was indorsed in blank by an officer of the bank, but for some reason, perhaps an oversight, it was never indorsed by the trustees. The exact date of these transactions is not clear but apparently they took place over a three day period as the acknowledgment on the assignment of the mortgage by the bank to the trustees is April 25, 1934, the assignment by the trustees to Blanche J. Halpern, one of the respondents and the wife of Sigmund H. Halpern, is dated April 26, 1934, and the acknowledgment by Blanche J. Halpern assigning the mortgage to one Frank Kittle is dated April 27, 1934. The notes bear a notice of protest dated April 27, 1934. The blank assignments of the stock certificates are undated.
The stock certificates and the separate assignments in blank were apparently delivered to Mr. Speenburgh on this occasion and remained in his possession at the time of the commencement of this proceeding. He claims title to them on the basis that he received them from his client, A. H- Todd & iSon, Inc., as his fee in connection with this transaction and Sigmund H. Halpern claims he furnished the consideration for the purchase of the notes and that Gleason B. Speenburgh while acting as his attorney obtained these certificates, the existence of which were unknown to Halpern. He further claims that Mr. Speenburgh withheld from him the information to the effect that the certificates were part of the security for the notes.
No transfer of ownership of the certificates has been made and they are still carried on the books of the City Service Company in the name of Anna D. Slover. According to the affidavit filed by an officer of the City Service Company no adverse claim of ownership to the stock was made until the company received a letter dated March 25, 1950 from Gleason B. Speenburgh. In that letter he inquired as to the necessary steps to transfer the stock to his name or to sell the stock. A prompt reply furnished him with the necessary instructions and requested an affidavit as to the circumstances surrounding his acquisition of the shares. *75 ■This went unanswered and the company followed up with a letter three months later. Mr. Speenburgh replied to the effect that court commitments had prevented him from attending to this matter. The correspondence continued off and on for a period of approximately five years. Although Mr. iSpeenburgh stated in letter form that his title arose out of services rendered no affidavit was furnished and the assignménts were never completed and submitted to the company to effect the transfer. On October 19, 1955 it appears that a copy of a letter from the company addressed to Mr. Speenburgh was sent to Mrs. Slover ?s son. This proceeding on behalf of the estate was commenced in March of 1958.
The notes in question contained the following provisions. “ On the nonperformance of this promise * # * full power and authority are hereby given to said Bank to sell, assign and deliver the whole of the said securities * * * at public or private sale * * * without either advertisement or notice, which is hereby expressly waived.” In accordance with these terms the bank could properly sell or assign the security. However, the interest of the bank was that of a pledgee and the purchaser or assignee of the notes would occupy the same position as the bank. Under these circumstances the person acquiring the stock certificates was under an obligation to account to Mrs. Slover for any excess after the obligation was paid. (Lutes v. Shenk, 285 App. Div. 416, 419.) The proof in the record indicates that the value of the mortgage was far in excess of the face amount of the notes held by the bank. In view of the assignment of the mortgage it appears that the purchaser of the notes elected to satisfy the debt by resorting to the mortgage. In the absence of proof to the contrary we must assume the mortgage was sold for its true value and the proceeds were sufficient to repay the purchaser of the notes whether it was Sigmund H. Halpern or A. H. Todd & Son, Inc. Assuming we believe Sigmund H. Halpern was the purchaser his testimony indicates that he paid Mrs. Slover’s obligation to A. H. Todd & Son, Inc. as part of the transaction. Assuming we believe A. H. Todd & Son, Inc. was the purchaser he was a junior lienor insofar as the mortgage was concerned and the value of the mortgage appears to have been sufficient to allow him to recover the amount of his lien over and above that which he advanced to the bank to buy the notes.
The respondent Gleason B. Speenburgh’s claim to the stock is on the basis that it was given to him as a fee by his client A. H. Todd & Son, Inc. The respondent Sigmund H. Halpern’s claim to the stock is on the theory that Gleason B. Speenburgh was *76 acting for him in purchasing the notes and collateral security and concealed the stock from him. It is immaterial which of these contentions is true as the stock represented excess security. Until sold in conformity with the terms of the pledge title to pledged property remains in the pledgor. (Markham v. Jaudon, 41 N. Y. 235.) There has been no transfer of the stock from the name of Anna D. Slover and under the circumstances of this case the purchaser of the notes from the bank was under an obligation to return the stock to Anna D. Slover upon satisfying his advances out of the mortgage. The City Service Company is directed to issue the current certificate and to pay the accumulated dividends to the estate of Anna D. Slover.
The Statute of Limitations has been asserted as a defense by the respondent Gleason B. Speenburgh. However in view of the fact that the stock was never transferred the time for the commencement of an action to recover the stock did not commence. The respondent Gleason B. Speenburgh apparently retained possession of the certificates .and blank assignments for approximately 24 years before this proceeding was commenced, and he took no steps to effect the transfer of ownership to himself. It appears that he considered it the better part of discretion to wait approximately 16 years before inquiring of the City Service Company as to how to go about .the transfer. On being advised as to the requirements of the company he delayed 8 years without complying with these requirements. Under these circumstances he is hardly in a position to assert a .Statute of Limitations or the equitable doctrine of estoppel against the representatives of the registered owner of the stock.