HENDRIES, INC., Respondent, *v.* AMERICAN EXPRESS COMPANY et al., Appellants, et al., Defendants.

PETER PAN ICE CREAM CO., INC., Respondent, *v.* AMERICAN EXPRESS COMPANY et al., Appellants, et al., Defendants.

First Department, December 17, 1970.

*Francis O. Mayer* of counsel (*Albert P. Loening, Jr.,* with him on the brief; *Turk, Marsh, Kelly & Hoare,* attorneys), for Bancofin S. A., appellant; *Laurence M. Shanahan* with him on the brief; *Carter, Ledyard & Milburn,* attorneys), for American Express Company, appellant.

*Edward Nathan* of counsel (*Matthew C. Anenberg* with him on the brief), for respondents.

MACKEN, J. December 19, 1967 appellant Banque de Commerce et de Financement Bancofin S. A. (Bancofin), a Swiss bank, issued an irrevocable letter of credit in favor of Mercantile Commodities Corporation (Mercantile) at the request and for the account of appellant B.N.S. International Sales Corporation (B.N.S.) for the ostensible purpose of financing a purchase by B.N.S. from Mercantile of some 15,000 cartons of an imported ice cream and bake mix. Under the letter of credit

Bancofin agreed to pay sight drafts to the extent of $255,075 presented by Mercantile on or before December 29, 1967 provided the drafts were accompanied by a commercial invoice, insurance certificates, and negotiable warehouse receipts "endorsed to the order of a New York bank, at the option of Bancofin" covering the mix to be purchased by B.N.S. which was then stored in a warehouse of defendant National Cold Storage Co. (National).

Thereafter, Mercantile duly presented its sight draft to appellant American Express Company (American), designated by Bancofin as its agent, together with the stipulated documents including an invoice evidencing sale of the mix by Mercantile to B.N.S. and negotiable warehouse receipts indorsed to the order of American. The draft was honored. Bancofin advised American that the receipts were to be the source for repayment of the moneys advanced to Mercantile under the letter of credit and instructed American to release the receipts to B.N.S. or to any party designated by B.N.S. upon payment of the amounts allocated by Bancofin to each receipt.

Respondents contracted to purchase from B.N.S. quantities of mix of the same brand as that covered by the warehouse receipts held by American, Hendries 4,000 cartons on December 11, 1967 and Peter Pan Ice Cream Company 2,100 cartons on April 3, 1968. The contracts called for future delivery. The location of the goods was not specified nor were there any other indicia of identification of specific merchandise. By November, 1968 B.N.S. had delivered 3,459 cartons to Hendries and 700 cartons to Peter Pan at which time B.N.S. failed to deliver the remaining 541 cartons to Hendries and 1,400 cartons to Peter Pan. Upon learning that a lot of 1,941 cartons, the exact number allegedly undelivered to respondents, was stored in National's warehouse and that the receipt covering it was held by American, respondents commenced these actions as against American to recover possession of the warehouse receipt which at the time was the only unredeemed receipt remaining in American's possession. Subsequently, Bancofin was made a party defendant; B.N.S. confessed judgment and is bankrupt, and the actions were discontinued against National.

Special Term granted respondents summary judgment awarding them possession of the warehouse receipt and the respective quantities of goods claimed thereunder. Appellants' cross motions for summary judgment were denied. In the meantime and shortly after commencement of the actions respondents had obtained possession of the warehouse receipt and mix by replevin pursuant to CPLR 7102.

With the exception of the ordering dates and amounts, both actions involve identical issues of law and fact and the parties have so treated them. At issue is whether respondents as buyers in the ordinary course of business (Uniform Commercial Code, § 1–201, subd. [9]) acquired title superior to appellants'. While apparently conceding that on their face the documents evidence an extension of credit to B.N.S. to finance the purchase of mix from Mercantile, respondents assert that in fact the purchase was fictitious and the intent of the parties was to secure payment of a direct loan by Bancofin to B.N.S., thereby creating a " security interest " within the purview of section 9–307 of the Uniform Commercial Code. They claim that in any event appellants " entrusted " possession of the mix to B.N.S. as defined by section 2–403 of the code. Unless these contentions have merit, the documents submitted give Bancofin title to the mix and the right to its possession. (*Farmers & Mechanics' Nat. Bank* v. *Logan,* 74 N. Y. 568; *Moors* v. *Kidder,* 106 N. Y. 32; *Chemical Nat. Bank* v. *New York Dock Co.,* 203 App. Div. 108, affd. 236 N. Y. 560; cf. *Chase Manhattan Bank* v. *Nissho Pacific,* 22 A D 2d 215.) Delivery of the warehouse receipts to Bancofin's agent American gave it possession just as effectively as if the mix had been transferred to another warehouse of its choice. (*Rummell* v. *Blanchard,* 216 N. Y. 348.) As was said in *Moors* v. *Kidder* (supra, p. 40): " where a commercial correspondent, however set in motion by a principal for whom he acts, advances his own money or credit for the purchase of property and takes the bill of lading in his own name, looking to such property as the reliable and safe means of reimbursement up to the amount when the original principal shall pay the purchase-price, he becomes the owner of the property instead of its pledgee, and his relation to the original mover in the transaction is that of an owner under a contract to sell and deliver when the purchase-price is paid."

" The purpose of summary judgment procedure is to search out the evidentiary facts and determine the existence of an issue from them. Bold conclusory assertions, even if believable, are not enough." (*Kramer* v. *Harris,* 9 A D 2d 282, 283.) Disclosure proceedings have been had and all parties having moved for summary judgment we must assume that, as required, they have " assembled and revealed " all pertinent evidence available to them. (*Dodwell & Co.* v. *Silverman,* 234 App. Div. 362; *First National City Bank* v. *Mayes,* 35 A D 2d 922; dissenting opn., McGivern, J.)

Respondents' papers are replete with conclusory assertions, for the most part without semblance of factual support. In furtherance of their contention that Bancofin in fact made a

direct loan to B.N.S., respondents submit evidence of transactions between B.N.S. and Mercantile prior to consummation of the Bancofin transaction which at the most may cast suspicion on the *bona fides* of B.N.S.'s purchase from Mercantile. Appellants, however, were not parties to any of these transactions nor is there any evidence that they had knowledge of them.

In support of the claim that appellants entrusted possession of the mix to B.N.S. it is said "defendants permitted B.N.S. to send instructions to the warehouse with respect to disposition of the goods" and "defendants permitted B.N.S. to contract to sell the goods to plaintiffs and others and to represent that it owned the goods and that it could make delivery at the warehouse". In support of these conclusions respondents submit evidence of a sale by B.N.S. to one Fountain Foods, Inc. and three letters from B.N.S. to National dated September 27, 1968 requesting National to release to Hendries on three future dates 1,894 cartons of mix contained in three separate lots.

Upon examination it is found that the Fountain Foods sale was made over a month before the Bancofin transaction and it may be noted that in contrast to the contracts between B.N.S. and respondents, the Fountain Foods contract provided for delivery "as soon as possible" and that the merchandise was "available immediately" at a specified warehouse of National. From respondents' papers it appears that, far from being permitted by appellants, the letters from B.N.S. to National were sent at respondents' insistence and National refused to turn over the goods. While not specifically so stated, it may be gathered from the record that the mix described in the letters was eventually delivered to plaintiffs after payment to American as required by the Bancofin agreement.

Respondents point to a letter allegedly sent by B.N.S. to American (receipt of which American denies) directing American to release to respondents the mix here at issue. The letter is dated coincidentally with the commencement of these actions and aside from the legal conclusions contained therein, the agreement with Bancofin is confirmed by the direction that transfer of title be "against payments only". The evidence not only fails to establish, but effectively negates that possession of the mix was entrusted to B.N.S. The facts here bear no resemblance to instances where a true owner gives physical and visible possession of goods to a known dealer of similar merchandise. (Cf. *Zendman* v. *Harry Winston, Inc.*, 305 N. Y. 180.)

The orders appealed from should be reversed on the law with costs and disbursements and the judgments entered thereon vacated. Respondents' motions for summary judgments should

be denied and summary judgment granted appellants awarding them possession of the warehouse receipt or, in the alternative, judgment for the value of the goods thereby represented in an amount to be determined by the court below.

McGivern, J. P. (dissenting in part). I would reverse so much of the order as grants plaintiff summary judgment. Summary judgment is unsuitable under the premises. We are confronted with two competing principles: one, that the defendants always had title, and two, that notwithstanding, they permitted B.N.S. to exercise apparent dominion over the goods, giving rights to purchasers of good faith. To my mind, there are too many cross-currents, involving mixed questions of law and facts, to justify summary judgment to either party. (*Janos* v. *Peck,* 21 A D 2d 529; *Stone* v. *Goodson,* 8 N Y 2d 8.) The majority opinion but demonstrates this conclusion.

Markewich and McNally, JJ., concur with Macken, J.; McGivern, J. P., dissents in part in an opinion.

Orders, Supreme Court, New York County, entered on July 7, 1970, reversed, on the law, the judgment entered thereon vacated, plaintiffs' motions for summary judgment denied, and defendants-appellants' cross motions for summary judgment granted awarding them possession of the warehouse receipt or, in the alternative, judgment for the value of the goods thereby represented in an amount to be determined by the court below. Appellants shall recover of respondent $50 costs and disbursements of this appeal.