[No. 17195.   Department One.   February 1, 1923.]

## STATE BANK OF WILBUR, *Respondent*, v. ALMIRA FARMERS WAREHOUSE COMPANY, *Appellant*.[1]

WAREHOUSEMEN   (3) — RECEIPTS — "WEIGH-TICKETS"—NEGOTIABILITY.   Warehouse weigh tickets for wheat are not negotiable where they fail to comply with Rem. Comp. Stat., § 3588, subds. (d), (e) and (g) requiring negotiable warehouse receipts to state whether the goods are to be delivered to bearer, order, or to a specified person, and the rate of storage, and to be signed by the warehouseman or his authorized agent.

SAME   (5-1)—ADVANCES—RIGHT TO LIEN—STATUTES—CONSTRUCTION.   A warehouseman has a lien upon wheat for advances noted on the warehouse receipts, for twine, sacks, hay, oats and coal furnished in connection with growing and handling the grain, under Rem. Comp. Stat., § 3613, giving him a lien for his charges for "storage, cartage, labor . . . and other advances thereon."

[1]Reported in 212 Pac. 543.

Appeal from a judgment of the superior court for
Lincoln county, Sessions, J., entered February 3, 1922,
upon the verdict of a jury rendered in favor of the
plaintiff, by direction of the court, in an action for con-
version. Reversed.

*F. H. McDermont* and *Fred B. Morrill,* for appel-
lant.

*C. M. N. Love,* for respondent.

Fullerton, J.—Respondent, the State Bank of Wil-
bur, brought this action against the appellant, Almira
Farmers Warehouse Company, for conversion of a
quantity of wheat, resulting, on a trial before a jury,
in a directed verdict in favor of the respondent for the
value of the wheat. A new trial was denied and this
appeal resulted.

The wheat in question was grown by one John
Hansen, and delivered to and stored with appellant by
Hansen between October 20 and October 30, 1920. At
that time weigh tickets were issued which, on Decem-
ber 20, 1920, were endorsed by Hansen and turned over
to respondent in partial payment of pre-existing debts.
At that time Hansen owed appellant $1,378.30 for
twine, sacks, hay and coal furnished by appellant to
Hansen, and appellant also held Hansen's note, dated
July 7, 1920, for $936.81, for oats, sacks, coal and hay
previously sold. On February 22, 1921, appellant, at
the request of respondent, issued two warehouse re-
ceipts for the wheat, noting on the receipts the ad-
vances. On February 25, 1921, respondent, in writing,
demanded the delivery of the wheat, and on March 2
tendered appellant the receipts, indorsed by Hansen,
together with a sum sufficient to pay all charges for
handling and storing the wheat, and appellant refused

delivery until payment in full of the amount claimed as advances was made.

While there are a number of questions discussed in the briefs, as we view the case there are but two questions involved; first, are the weigh tickets negotiable receipts, so that the failure of appellant to note thereon the claimed advances estopped it from collecting such advances of a holder without notice; and second, are the advances such as would entitle appellant to a lien upon the wheat.

Section 3588, Rem. Comp. Stat., prescribing the form of warehouse receipts, reads:

"Warehouse receipts need not be in any particular form, but every such receipt must embody within its written or printed terms:

"(a) The location of the warehouse where the goods are stored.

"(b) The date of issue of the receipt.

"(c) The constructive number of the receipt.

"(d) A statement whether the goods received will be delivered to the bearer, to a specified person or to a specified person or his order.

"(e) The rate of storage charges.

"(f) A description of the goods or of the packages containing them. If the same be issued for wheat it shall specifically state the variety of wheat by name.

"(g) The signature of the warehouseman, which may be made by his authorized agent.

"(h) If the receipt is issued for goods of which the warehouseman is owner, either solely or jointly or in common with others, the fact of such ownership; and

"(i) A statement of the amount of advances made and of liabilities incurred for which the warehouseman claims a lien. If the precise amount of such advances made or of such liabilities incurred is, at the time of the issue of the receipt unknown to the warehouseman or to his agent who issues it, a statement of the fact that advances have been made, or liabilities incurred and the purpose thereof is sufficient.

"A warehouseman shall be liable to any person injured thereby, for all damages caused by the omission from a negotiable receipt of any of the terms herein required."

The essential and fundamental requirements set out in subdivisions d, e and g are not present on these weigh tickets, and without them the tickets cannot be considered as negotiable instruments.

As is said in 27 R. C. L. 963:

"A weigh ticket or tag given to the owner when his grain or other commodity is weighed at a warehouse preliminary to its storage, frequently contains less than is required of a warehouse receipt, and is not classed as such."

See, also, *Sinsheimer v. Whitely,* 111 Cal. 378, 43 Pac. 1109, 52 Am. St. 192.

In *First National Bank of Pullman v. Young,* 20 Wash. 337, 55 Pac. 215, it is held that an action for conversion of wheat would lie upon memoranda similar to these weigh tickets, but the only question there before the court was the sufficiency of the complaint. There was no question of the negotiability of the instruments, nor the right of the warehouseman to a lien.

Had appellant in this instance refused to issue warehouse receipts upon the tender of the weigh tickets, or to otherwise account for the wheat delivered, no doubt an action would lie against it, but in such an action the defense it is now making would be open to it. It follows, we think, that all the rights the respondent acquired by the transfer of the receipts was the right Hansen had in them.

The second question depends upon the meaning of the statutes. Section 3613, Rem. Comp. Stat., reads:

"Subject to the provisions of Section 3616, a warehouseman shall have a lien on goods deposited or on

the proceeds thereof in his hands, for all lawful charges for storage and preservation of the goods; also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering and other charges and expenses in relation to such goods; also for all reasonable charges and expenses for notice, and advertisements of sale, and for sale of the goods, where default has been made in satisfying the warehouseman's lien.''

Section 3616 reads:

''If a negotiable receipt is issued for goods, the warehouseman shall have no lien thereon, except for charges for storage of those goods subsequent to the date of the receipt, unless the receipt expressly enumerates other charges for which a lien is claimed. In such case there shall be a lien for the charges enumerated so far as they are within the terms of Section 3613, although the amount of the charges so enumerated is not stated in the receipt.''

Respondent contends that, under section 3613 the only advances for which a lien may be claimed are advances in connection with the storage of the goods, citing *Schwab v. Oatman,* 56 Misc. Rep. 393, 106 N. Y. Supp. 741. In the New York case, the statute construed read:

''A warehouseman shall have a lien upon goods stored with him for his charges for storage, cartage, labor, freight, insurance and other advances thereon, including weighing and coopering, in relation to such goods or other goods belonging to the same owner, and he may detain such goods until his lien is paid.''

The court held that the warehouseman had no lien for money loaned. It does not appear, however, for what purpose this money was used. A comparison of the two statutes shows ours to be much broader than the one construed by the New York court, the statute in this state being the uniform warehouse law as drawn by the commissioners. No case has been called

to our attention directly construing this section of the law, though in *State ex rel. Broadwater Farms Co. v. Broadwater Elevator Co.*, 61 Mont. 215, 201 Pac. 687, the court said:

"The receipts on their face show that the grain stored is charged with the amount of 'cash . . . furnished,' and neither the original holder nor his assignee could compel the return of the grain without returning the money so advanced, with interest thereon."

In that case it appears that the advances were for "seeds, bags, merchandise and cash," and upon a showing of conversion, the supreme court of Montana ordered a judgment entered for the market value of the wheat less the storage charge and less these advances.

Under the evidence in the present case, all the advances were made in connection with the growing and handling of the grain in question, and we are of the opinion that such advances clearly fall within the provisions of section 3613.

The cause is reversed and remanded with instructions to grant a new trial.

BRIDGES, PARKER, MITCHELL, and TOLMAN, JJ., concur.