JOHNSON, P. J.
This case gives rise to the question whether a warehouseman may have a general lien, not only for charges for storage and ordinary services and expenditures incident to the business, but also for money advanced, in the case of liquors, for taxes, payable by the owner under the internal revenue laws. The determination of that question depends on the interpretation to be given to sections 27 and 28 of the Uniform Warehouse Receipts Act of this state. (See 3 Deering’s General Laws, 1931 ed., p. 4975, Act 9059, and amendment of 1933, Stats. 1933, p. 2398.)
There is no dispute concerning the facts of the ease. Beginning in the year 1933 Western Distillers Corporation had at various' times stored liquors in defendant’s warehouses, and on January 18, 1935, there was issued to that corporation by defendant a nonnegotiable warehouse receipt for 20 barrels of rye whiskey then in one of defendant’s warehouses.
The receipt, among other things, stated that the warehouseman claimed, in the language of section 27 of the Uniform Act, “a lien for all lawful charges for storage and preservation of the goods,' also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering and other charges and expenses, in relation to such goods”. In the latter part of March the Western Distillers Corporation, being indebted to plaintiff, besides making payment of a sum of money, transferred to plaintiff certain personal property, and also the 20 barrels of whiskey in question by assignment and delivery of the warehouse receipt therefor. Thereafter on June 12th, the plaintiff tendered to defendant the sum of $9, claimed by plaintiff to be the amount for which defendant had a lawful lien; and demanded delivery of the whiskey described in the *Supp. 751 warehouse receipt. The tender was refused and delivery-withheld upon the ground that, in the general account between defendant and Western Distillers Corporation, there was a balance owing to defendant in a large amount for money advanced for taxes, bottling and other items.
Plaintiff’s complaint, thereafter filed, is one in claim and delivery for the whiskey in question.
The defendant in its answer pleads that at the time of plaintiff’s demand there was owing to defendant by plaintiff’s assignor not only the storage charges on the lot in question, but sums of money for advances made at the special instance and request of plaintiff’s assignor. And defendant asserted a lien upon the lot in question for all unpaid charges and advances.
The court made written findings to the effect that the value of the whiskey in suit was $1600 and that plaintiff was entitled to delivery of the lot, or in lieu thereof to the sum of $1600 upon payment to defendant of $16,181.88, representing the amount of the lien of defendant. From the judgment entered accordingly the plaintiff prosecutes this appeal.
In plaintiff’s memorandum it is urged, first, that under section 1856 of the Civil Code a warehouseman has no general lien for advances; and secondly, that under the Uniform Warehouse Receipts Act there is no lien for a general balance of account; and moreover, that payment of taxes is not for preservation of the goods, but is in effect a loan.
In support of plaintiff’s contention that a warehouseman’s lien is special only, three California cases are cited. Stewart v. Naud, 125 Cal. 596 [58 Pac. 186], was decided in 1899, about ten years before the Uniform Warehouse Receipts Act was adopted in this state. Boas v. De Pue Warehouse Co., 69 Cal. App. 246, 250 [230 Pac. 980], presented the question whether, after the withdrawal of a part of a single bailment, a lien was retained on the residue for the entire amount of charges on the original quantity. In holding that the lien of the entire amount was retained, the court adopted a passage from 27 Ruling Case Law, page 1007, in which incidentally it was said that a warehouseman’s lien is specific and not general. So far as any issue before the court was concerned, that statement was merely dictum. The language drawn from the volume cited was a statement of the common-law *Supp. 752 rule; and on page 1008 attention is directed to the fact that under the uniform warehouse acts the lien is extended to all such charges and claims as are enumerated in section 27 of our act, as amended in 1933. Jewett v. City Transfer & Storage Co., 128 Cal. App. 556 [18 Pac. (2d) 351], is concerned, not with the character of the lien acquired by force of the statute, but with the enforcement of the remedy. The conclusion announced was that, under section 35 of the Uniform Warehouse Receipts Act, a warehouseman may enforce his lien either by a public sale upon notice as provided in section 33, or by a judicial sale under a decree of foreclosure, as authorized in the case of pledged property by section 3011 of the Civil Code.
Section 28 of the Uniform Warehouse Receipts Act, which is embodied in our statute, provides that except when goods are represented by a negotiable receipt, a warehouseman’s lien may be enforced “against all goods, whenever deposited, belonging to the person who is liable as debtor for the claims in regard to which the lien is asserted”.
In Knoxville Outfitting Co. v. Knoxville F. Storage Co., 160 Tenn. 203 [22 S. W. (2d) 354], the court said that the section in “prescribing the reach of the warehouseman’s lien is repugnant to the common-law rule. When there is conflict between the common law and a statute, the provision of the statute must prevail”.
The Uniform Warehouse Receipts Act is based on a statute adopted in New York in 1885; and the question whether the Ren under that statute was general or special received consideration in Stallman v. Kimberly, 53 Hun, 531 [6 N. Y. Supp. 706], affirmed 121 N. Y. 393 [24 N. E. 939]. It had long been established that wharfingers had a general Ren at common law, and the purpose of the statute was to place warehouse-men on the same basis, and put an end to any possible distinction between the two classes of bailees. Holding that the defendants, who were warehousemen, were justified in refusing to deliver articles stored until payment should be made of their charges and expenses of receiving and delivering other articles already withdrawn, Judge Barrett, at the close of his opinion for the general term, said 53 Hun, 531 [6 N. Y. Supp. 708] : “The fact is, warehousing has become an immense industry in these days, and the act is nothing more than a fair recognition of the advance. For *Supp. 753 merly the wharfinger was in the habit of keeping a warehouse on his wharf, and the warehousing business was a sort of subsidiary appendage thereto. Now warehousing, as an independent institution, completely dwarfs the wharfinger; and it would be the height of absurdity to retain the general lien in the one case and deny it in the other. Upon the whole we are of the opinion that the defendants had a general lien upon the goods replevied, and that consequently the learned judge erred in directing a verdict for the plaintiffs. Our judgment is' therefore for the defendants, with costs.”
Likewise in In re Taub, 7 Fed. (2d) 447, 451, in a case arising under the New Jersey Uniform Warehouse Receipts Act, the court said: “The common-law lien has been in many states extended by statute, so as to give a general rather than a specific lien. This was done in New York. (Stallman v. Kimberly, 121 N. Y. 393 [24 N. E. 939].) And it was done in New Jersey. There is no doubt that the New Jersey Uniform Warehouse Receipts Law gives a general rather than a specific lien. ’ ’ It was held in that case, however, that section 28 of the statute was not applicable, since the goods stored did not belong to the debtor, Taub, and he had not been so entrusted with possession as to create an estoppel against the owner.
The lien is likewise held to be general in Kaufman v. Leonard, 139 Mich. 104 [102 N. W. 632] and Roehl Storage Co. v. Wilson, 268 Mich. 691 [256 N. W. 598, 95 A. L. R. 1525],
The crucial question in the present case is whether the lien may be asserted for the amount of the taxes paid for account of the Western Distillers Corporation. The plaintiff contends that such advances are not within the purport of section 27 of the Uniform Warehouse Receipts Act, but constitute independent loans made upon the personal responsibility of the debtor. In support of this contention plaintiff, puts reliance on Schwab v. Oatman, 56 Mise. 393 [106 N. Y. Supp. 741], In that ease the plaintiffs had purchased-through a certain corporation, acting as the selling agent for-: a cotton mill, a number of bales of cotton cloth. According to custom, delivery was to be deferred pending shipping order from the purchasers. Meanwhile the goods were forwarded from the mill to the agent, and were placed by the *Supp. 754 agent in the warehouse of the defendants, who issued warehouse receipts therefor, and made loans thereon to the agent prior to plaintiffs’ payment to the mill for the goods. Subsequently the agent became insolvent, and the defendants refused to deliver the goods to plaintiffs except on payment of the loans and advances thereon, together with the storage charges on those as well as other goods stored by the selling agent.
The trial court held that the plaintiffs had title to the goods, and then proceeded to consider whether the defendants had a lien for the advances made to the selling agent and the storage charges on other goods. The statute in force at the time in New York provided: “A warehouseman shall have a lien upon goods stored with him for his charges for storage, cartage, labor, freight, insurance and other advances thereon, including weighing and coopering in relation to such goods or other goods belonging to the same owner, and he may detain such goods until his lien is paid. ’ ’
In comparing this clause with section 27 of our statute, which is in the language of section 27 of the Uniform Warehouse Receipts Act, it is to be noted that there is a material difference both in the phrasing and collocation of the provision in respect of advances. The New York statute gave a lien for “charges for storage, cartage, labor, freight, insurance and other advances thereon”, and in the case cited the trial court held that the words, “other advances”, under the rule of construing general words with reference to the words preceding them, should have their meaning limited to advances of the same general nature as advances made in handling or protecting the goods, and should not be extended to include loans made on the security of the goods.
In section 27 of the Uniform Warehouse Receipts Act there is quite a different setting, which renders the rule of ej-itsdero generis inapplicable. Section 27 extends the lien to “all lawful charges for storage and preservation of the goods, also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering and other charges and expenses in relation to such goods.”
Upon an appeal in Schwab v. Oatman, supra, to the appellate division (129 App. Div. 274 [113 N. Y. Supp. 910]), the question of title was treated as the only issue; and *Supp. 755 upon that point the court was not agreed. The majority opinion was for affirmance of the judgment of the trial court, while the dissenting opinion held to the view that at the time when the loans were made, the title was not in plaintiffs, but was in the selling agent; and that the plaintiffs had not shown a right to recover the goods from the warehousemen, who had made the advances innocently in reliance on the ownership of the selling agent. The case then went to the court of appeals (198 N. Y. 545 [92 N. E. 1101]), where on the strength of the dissenting opinion below, the judgment was reversed and a new trial was ordered. So in the final analysis it would seem that even under the language of the New York statute then in force, a lien for money advanced as a loan to an owner of goods was deemed enforceable.
In Russell v. Empire Storage & Ice Co., 332 Mo. 707 [59 S. W. (2d) 1061], the plaintiffs had stored several carload lots of eggs in defendant’s warehouse, and had then borrowed from defendant money on each lot, executing a separate note for each loan, and as security pledging the designated lot and the warehouse receipt therefor. Each note was payable on demand, and provided that payment thereof, or of any other obligation of the makers “now existing or that may hereafter arise, is secured by the hypothecation of certain personal property delivered to the payee”. A portion of the eggs having been spoiled through alleged negligence of defendant, and defendant having refused to deliver other portions without payment of all the amounts lent, plaintiffs sued for damages for breach of the storage contracts. After stating at page 732 that the circumstances showed that it was the intention of the parties that all the warehouse receipts should be security for all the notes, and that any surplus proceeds of sale of any one carload-lot should be applied to any deficiency in the payment of the loans on other carload-lots, the court added: “Moreover, under our Uniform Warehouse Receipts Act a lien is provided, not only for storage or other charges, but ‘also for all lawful claims for money advanced’ (see. 14400, R. S. 1929) which ‘may be enforced against all goods, whenever deposited, belonging to the person who is liable as debtor for the claims in regard to which the lien is asserted’. (Sec. 14401, R. S. 1929.)”
*Supp. 756 The right to a general lien for advances under section 27 of the Uniform Warehouse Receipts Act had consideration also in two decisions of the Supreme Court of Washington in the case of State Bank of Wilbur v. Almira Farmers Warehouse Co., the decision in the first appeal being reported in 123 Wash. 354 [212 Pac. 543]; and in the second appeal in 131 Wash. 623 [230 Pac. 817].
In that case a farmer, John Hansen, stored in the warehouse a quantity of wheat grown by him, and received at the time the “weigh tickets” therefor. He was indebted to the bank for preexisting loans, and owed the defendant about $2,300 for. oats, sacks, twine, hay and coal. The “weigh tickets”, when received b;^ Hansen, were endorsed by him, and delivered to the bank in partial payment of his indebtedness. Later at the request of the bank the defendant issued two warehouse receipts for the wheat, noting thereon the amounts of defendant’s advances to Hansen. The bank thereupon demanded delivery of the wheat, tendering the receipts duly endorsed and an amount sufficient to pay all charges for storing and handling. As the defendant refused to make delivery unless the amount of its advances was also paid, the bank sued in replevin. The decision in the trial court was in favor of the bank, but on appeal (123 Wash. 354 [212 Pac. 543]), after quoting section 27 of the Uniform Warehouse Receipts Act, the court held that the defendant’s advances, which were made in connection with the growing and handling of the grain in question, clearly fell within the provisions of section 27. The case having been remanded, a new trial was had resulting in judgment for the defendant. On the appeal by the bank from that judgment (131 Wash. 623 [230 Pac. 817]), it was contended that the lien for advances should be limited to expenditures made for the benefit of the wheat while it was stored or in transit to defendant’s care. The court held, however, that as the advances of defendant had all been made before the date of the warehouse receipts, and the bank knew the amount payable, the defendant was entitled to retain possession of the wheat until all the advances and charges were fully paid.
In the first appeal (123 Wash. 354 [212 Pac. 543]), the bank, citing the New York ease of Schwab v. Oatman, 56 Misc. 393 [106 N. Y. Supp. 741], hereinbefore noticed, con *Supp. 757 tended that the warehouseman’s lien for advances was limited to those made in connection with the storage of the goods. But the court refused to sanction such limitation, saying: “A comparison of the two statutes shows ours to be much broader than the one construed by the New York court, the statute in this state being the Uniform Warehouse Law as drawn by the commissioners.”
In the case in hand plaintiff would have us follow the decision in Chemical Nat. Bank v. New York Dock Co., 203 App. Div. 108 [196 N. Y. Supp. 414], affirmed in memo, in 236 N. Y. 560 [142 N. E. 283]. The facts in that ease, however, differentiate it from this. There, the bank issued a letter of credit to an importing company designed to enable the purchase of merchandise, to be paid for on presentation to the bank of a sight draft for the invoice cost with shipping documents attached. The draft having been paid by the bank, the importers, for purposes of storage and sale, were allowed under the customary practice to take possession of the goods pursuant to trust receipts executed in favor of the bank. Those receipts stated that the merchandise was to be held in storage as the bank’s property, with permission for sale thereof by the importers for the account of the bank, the proceeds to be paid to it. The goods when landed were then stored by the importers with the defendant without disclosing, however, the bank’s ownership; and a warehouse receipt issued to the importers was endorsed by them and delivered to the bank with an order for the goods. Thereafter the importers became bankrupt; and the bank, making tender of storage charges, demanded delivery of the goods. Delivery was refused on the ground that defendant had a general lien for indebtedness owing by the importers for the warehouseman’s charges on other goods previously stored and withdrawn. The court held, however, that both the credit agreement and the trust receipt expressly provided that ownership remained in the bank, and contained nothing suggesting any right in the importers to pledge the goods. The ownership being in the bank, the warehouseman’s lien was accordingly limited to the charges against the specific goods belonging to the bank. In so holding the court said: “Letters of credit issued by banks form a large and important factor in important commercial transactions of the community. To adopt the *Supp. 758 strained rule urged by the defendant, would make the issuance of letters of credit of the kind described herein a very precarious kind of business.”
In the case before us the plaintiff received an assignment of a nonnegotiable warehouse receipt, which expressly set forth that the warehouseman claimed a lien for all lawful claims for money advanced as well as for charges and outlays of the kinds enumerated in section 27 of the Uniform Warehouse Receipts Act. The plaintiff, as assignee of Western Distillers Corporation, had no stronger right than that company itself; and since a warehouseman issuing a nonnegotiable receipt has a general lien under sections 27 and 28 for all lawful claims for money advanced against all goods of his debtor, whenever deposited, we conclude that in this case the defendant was entitled to assert its lien against the goods in question for its advances for taxes and its charges and other outlays in relation to goods, whenever deposited by the Western Distillers Corporation previous to plaintiff’s demand.
The judgment for defendant is therefore affirmed with costs.
Conlan, J., and Goodell, J., concurred.