(618 P.2d 1206)
No. 50,847

STATE OF KANSAS *ex rel.* RALPH CRAWFORD, *Appellees,* v. CENTER-
VILLE GRAIN COMPANY, INC., *Appellee,* DONALD UNGEHEUER,
DAVID UNGEHEUER & DILLARD UNGEHEUER, *Appellants.*

October 31, 1980.

*Gerald W. Hart* and *Jesse T. Randall,* of Mound City, for the appellants.

*Edward G. Collister, Jr.,* of Collister & Kampschroeder, of Lawrence, for the
appellee Centerville Grain Company, Inc.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: This is an appeal from the district court's denial
of certain claims for assets in a receivership proceeding dissolv-
ing an insolvent grain corporation pursuant to K.S.A. 17-6901 *et
seq.*

The appeal arises out of the receivership of the Centerville
Grain Company, Inc., which was seized on July 20, 1976, by the

State Grain Inspection Department pursuant to statute. K.S.A. 34-2,104. Thereafter, on October 8, 1976, various claims were filed by Donald, David and Dillard Ungeheuer, seeking to receive the proceeds from certain grain, free of the obligations of the corporation in receivership. The basis of the claims was that the grain was stored in the bins of the corporation prior to and at the time the corporation was seized, pursuant to a private oral lease with the corporation, and that such lease allegedly entitled claimants to receive the proceeds of the sale of such grain, free and clear of other obligations of the corporation. The receiver denied the claims, finding that the Ungeheuers were entitled only to be recognized as valid lien holders of open storage grain and to share in the pro rata distribution upon sale of the corporation's assets.

At trial, claimants, as well as Eugene Keuser, president and manager of the Centerville Grain Company, Inc., testified as to the alleged oral lease. Over the claimants' objection, the receiver testified that private leases were considered to be contrary to the warehousing laws and that no such custom existed in the industry. The following findings and conclusions were filed by the trial court on January 9, 1979:

"Findings of Fact

"1. Claimants Ungeheuer delivered the following:

3,328.678 bushels of oats (David Ungeheuer)

2,255.16 bushels of wheat (David & Dillard Ungeheuer)

4,216.83 bushels of wheat (Donald Ungeheuer) to Centerville Grain Company, Inc., prior to July 20, 1976, when the State Grain Inspector took possession of Centerville Grain Company, Inc., and its assets including all grain pursuant to K.S.A. 34-2104.

"2. Claimants testified that they had a private lease agreement with Eugene Keuser, President of Centerville Grain Company, Inc., concerning said grain, but there was no testimony as to the specific terms of said lease agreement as to price, terms, etc., and there was no written agreement of any kind.

"3. When the claimants delivered their grain, it was weighed, stored in bins, and they were issued 'scale tickets.'

"4. Claimants were not issued any 'receipts' or 'warehouse receipts' for their grain.

"5. Claimants were not issued any documents identifying their grain as identity preserved grain.

"6. Claimants did not claim their grain as identity preserved grain.

"7. The bins where claimant's grain was stored were an integral part of the elevator.

"8. Claimants did not sustain the burden of proving they had private

leasehold interests in the grain they delivered to the Centerville Grain Company, Inc.

"9. The Kansas Grain Inspection Department has treated private lease agreements with warehouses licensed and bonded under the Kansas Grain Inspection Act as being in violation of the public policy embodied in said act.

"Conclusions

"1. There were no private lease agreements for claimants to store the grain they delivered to Centerville Grain Company, Inc.

"2. The grain claimants delivered was 'stored grain' pursuant to K.S.A. 34-227.

"3. The grain claimants delivered was not 'identity preserved grain.'

"4. A private lease agreement for grain storage in a warehouse licensed and bonded pursuant to the Kansas Grain Inspection Act is contrary to public policy and the operation of said act and therefore void, especially as against the Receiver.

"5. Claimants are to be treated as a grain lien creditor as are others who owned stored grain in the Centerville Grain Company, Inc., and are to be paid their pro rata share upon distribution of funds in the same manner as other grain lien creditors.

"Order

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the claimants, David, Donald and Dillard Ungeheuer, shall be treated as grain lien creditors and paid on a pro rata share upon distribution of funds available to the grain lien creditors of Centerville Grain Company, Inc."

Claimants brought this timely appeal, raising several grounds of error.

1. Claimants contend the district court erred in finding that the grain delivered to the bins was "stored grain" as that term is defined in K.S.A. 34-227.

The regulation of grain elevators as warehouses has been the subject of statutory regulation in Kansas since 1868 (G.S. 1868, ch. 58). In 1931, the various statutes in this field were generally revised and compiled (L. 1931, ch. 194). This act is found in its present form at K.S.A. 34-223 *et seq.* K.S.A. 34-224 provides:

"The term public warehouse, as used in this act, shall be deemed to mean every elevator or other building in which grain is received for storage or transfer for the public."

Further statutory provisions require public warehousemen to be licensed, bonded, insured and subject to inspection. K.S.A. 1979 Supp. 34-228, and K.S.A. 34-229, -230, -236, -251. "Stored grain" is defined in K.S.A. 34-227:

"Whenever any grain has been received in any public warehouse, as in this act defined, located in this state, and same is not purchased by the lessee, owner or manager of such warehouse, such grain shall be considered stored grain."

Claimants urge that the grain in the present case was not delivered to a public warehouse and was thus not stored grain, as defined above. Their argument is that the alleged private lease with the grain company controls, and that such private agreement and separate storage precludes a finding that claimants stored grain in an "elevator or other building in which grain is received for storage or transfer for the public."

Centerville Grain Company, Inc., was licensed and bonded pursuant to the act. The issue of whether such corporation constituted a public warehouse was never raised below and, at any rate, it is apparent from the nature of the receivership proceedings that claimants' contention is without merit. Testimony indicated that the bins in which claimants stored their grain had previously been used for storage by the Grain Company. Claimants do not argue that the bins in which the grain was received were not bonded and licensed under the act or that such bins were not normally used for public use. We conclude that such bins were "public warehouses" as defined in K.S.A. 34-224. See also 93 C.J.S., Warehousemen and Safe Depositaries § 1.

Further, claimants contend that the grain deposited should not be considered "stored grain" under K.S.A. 34-227. The issue of what constitutes "stored grain" under K.S.A. 34-227 was considered in *Hartford Accident and Indem. Co. v. State of Kansas*, 247 F.2d 315 (10th Cir. 1957). The primary contention in that case was that the relationship of warehouseman and depositor does not exist unless a statutory warehouse receipt is issued. In *Hartford*, as well as in the present case, the warehouse receiving the grain issued scale receipts to its depositors. The statutory provisions require the issuance of some sort of warehouse receipt upon the deposit of any grain. See K.S.A. 34-238 *et seq.* The *Hartford* court rejected the contention that no warehouseman-depositor relationship existed, stating:

"An interpretation of the various sections of the Kansas Grain Warehousemen Statute leads us to conclude that all grain delivered to a licensed warehouseman which is not sold to him becomes stored grain, and that this results whether a statutory warehouse receipt is issued or whether the deposit of the grain is evidenced by such scale tickets as are involved in this case." 247 F.2d at 320.

Claimants concede that the grain delivered in the present case was not purchased by the corporation. This fact, in conjunction with our conclusion that the corporation was a "public ware-

house," leads us to the finding that the grain constituted "stored grain" under K.S.A. 34-227.

2.  Claimants also argue the trial court erroneously found that no private lease agreement existed between claimants and the corporation. In view of the conclusion we reach, discussion of such issue is irrelevant. The more important issue is whether the court erred in finding that a private lease agreement for grain storage in a public warehouse is void as contrary to the Kansas Grain Inspection Act and public policy. Claimants maintain that: (1) there was no "public storage" in the present case; (2) the private agreement violates no public or societal interest; and (3) the statutes in question do not specifically prohibit such an agreement.

This is an issue of first impression. The purpose of the statutory provisions in question is to provide a means whereby the public users of warehouse facilities may be protected from loss. If there is compliance with the act, state officers can check the sales and transactions made by the warehousemen and properly protect the public. *Fidelity State Bank v. Central Surety & Ins. Corp.,* 228 F.2d 654, 657 (10th Cir. 1955). The statutory regulations place strict requirements on those engaged in the warehousing business. *Travelers Indemnity Company v. United States,* 271 F.2d 521, 523 (10th Cir. 1959), *cert. denied* 362 U.S. 912 (1960). The inspection, grading and storage of grain for the public has long been recognized to be of such importance as to be affected with the public interest and thus subject to reasonable statutory regulations by the state legislature. *Millers Nat'l Ins. Co. v. Bunds,* 158 Kan. 662, 666, 149 P.2d 350 (1944); *Kipp v. Goffe & Carkener,* 144 Kan. 95, 101, 58 P.2d 102 (1936).

The lease agreement in question flies in the face of the purposes intended to be advanced by the statutory regulations. The primary purpose of the act is to protect public depositors from loss. Such purpose is manifestly abused if private depositors, such as claimants, may avoid the orderly distribution of assets in such a proceeding to the detriment of other public depositors. Clearly, the act seeks to remedy such a situation. To allow such an agreement to stand would be to condone discriminatory practices by warehousemen and depositors and to undermine the goals of public welfare sought to be advanced by the legislation. We conclude the district court properly held the lease to be contrary to public policy as manifested in the statutory provisions.

While we agree that such leases are not explicitly excluded from the operation of the act, the provisions in question establish a comprehensive scheme governing the deposit of grain, including a provision which offers the protection claimants seek. K.S.A. 34-241a sets out a procedure whereby a depositor may preserve the identity of grain upon the completion of several explicit statutory directives. Thus, while private leases are not explicitly excluded by the provisions, the statutory scheme clearly preempts the subject by providing a specific procedure to obtain the desired result. By failing to comply with the statutory directives, claimants are foreclosed from the preferred status they seek.

In summary, we hold that private lease agreements, such as the one alleged in the present case, are contrary to public policy as manifested in K.S.A. 34-223 *et seq.* Such provisions seek to regulate a field which is closely connected to and affected by the public interest. As such, certain responsibilities, duties and procedures devolve upon warehousemen and depositors in furtherance of the public goals sought to be legislated. The statutory provisions provide a fairly comprehensive scheme which can only effectuate the public interests if enforced and followed. Private lease agreements have been preempted by the statutes and are contrary to the intent expressed therein. As such, they must be held void as contrary to public policy.

3. Claimants argue the trial court erred in allowing Walter Allen, the appointed receiver, to testify concerning the legality of private leases.

Claimants argue that Allen was not properly qualified to give a legal opinion. While the relevancy of the specific incident described in Allen's testimony is questionable, the record indicates Allen was testifying as to the propriety of private leases as considered by the administrative body charged with the enforcement of the grain laws. It is a general rule that interpretation of statutes by an administrative body may be relevant to a particular issue. 2 Am. Jur. 2d, Administrative Law § 241. However, the interpretation of statutes is a question of law and the final construction of a statute rests within the courts. *State, ex rel., v. Unified School District,* 218 Kan. 47, 49-50, 542 P.2d 664 (1975); *Amoco Production Co. v. Armold, Director of Taxation,* 213 Kan. 636, Syl. ¶ 4, 518 P.2d 453 (1974).

In the present case, the admission of Allen's testimony does not appear erroneous. The trial court made a factual finding that the Kansas Grain Inspection Department has considered private leases illegal. However, the record does not indicate that the trial court's ultimate legal conclusion regarding the lease was other than an independent construction of the relevant provisions based upon all evidence presented and the statutes themselves. Allen's testimony was relevant to the issue at hand and his qualifications were reasonably established. In view of such circumstances, no error is found.

4. The final issue is whether the district court erred in concluding claimants to be grain lien creditors.

As noted elsewhere, the grain stored by claimants was not "identity preserved grain" under K.S.A. 34-241a. Claimants merely received scale tickets from the public warehouse corporation upon receipt of their grain. As such, the grain is "stored grain" as defined in K.S.A. 34-227 since the corporation did not purchase it, and claimants are entitled to be treated as grain lien creditors and to share in the pro rata distribution of assets with others similarly situated.

Affirmed.