**In re Thomas Michael RAGAN, Debtor.**

**Bankruptcy No. 81–40116.**

United States Bankruptcy Court,
D. Kansas.

Oct. 8, 1981.

Everett Fritz, Kansas City, Kan., for Jefferson County Co-op Ass'n.

Marlin A. White, Holton, Kan., for Northeast Production Credit Ass'n.

### MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

The Northeast Kansas Production Credit Association (PCA), had a security interest in the debtor's grain and crops before the debtor stored his grain with the Jefferson County Cooperative Association (Coop). The Coop also furnished to the debtor herbicides, insecticides and fertilizer on credit from April 29, 1980 to May 20, 1980.

PCA claims a superior lien on the grain by virtue of its security interest and financing statement filed March 29, 1979. The Coop claims a superior lien by virtue of a statutory warehouseman's lien.

The issues for determination are:

1. Is a warehouseman's lien granted a superpriority under the provisions of K.S.A. § 84–9–310 (1965).

2. Does Coop have a warehouseman's lien for credit advanced to the debtor (bailor) which the debtor used to produce the stored grain under the provisions of K.S.A. § 34–266 (Supp.1980).

The parties have submitted legal memoranda and the issues are ready for resolution.

## FINDINGS OF FACT

Though the parties have not formally stipulated to any facts, there are no facts in dispute. The facts are gleaned from the parties' respective briefs, and the debtor's affidavit.

On or about March 5, 1979 the debtor executed and delivered a security agreement and financing statement to the Northeast Kansas Production Credit Association (PCA). The financing statement covered in part "All feed and grain, crops now growing or hereafter planted or produced." The real estate on which the crops were growing or were to be grown was not described and the financing statement was filed with the Jefferson County Register of Deeds and Kansas Secretary of State on March 29, 1980. The debtor defaulted on a promissory note secured by the security agreement, and PCA filed an action to foreclose its security interest on October 22, 1980 in Jefferson County, Kansas District Court. On January 23, 1981 judgment was entered against the debtor in favor of PCA for $52,540.25 with interest at 11½% and costs, and the judgment foreclosed all items of security contained in the security agreement.

The Jefferson County Cooperative Association (Coop) stored the debtor's grain and issued weight or scale tickets to the debtor. The Coop also furnished herbicides, insecticides and fertilizer on credit to the debtor from April 29, 1980 to May 30, 1980 to be used during the debtor's 1980 planting season. Dumping and storage charges for the stored grain are owing in the amount of $353.68. PCA does not dispute this amount or Coop's lien priority in regards to these amounts. The charges for herbicides, insecticides and fertilizer furnished by Coop were $8,815.28. PCA does not dispute this amount but does dispute the Coop's lien priority in regards to these charges.

The debtor filed a Chapter 13 petition on February 18, 1981 and the Court ordered the abandonment of any interest the trustee might have in the grain in question, and agreed to assume jurisdiction to resolve the priority dispute between PCA and Coop on June 8, 1981.

## CONCLUSIONS OF LAW

This case involves a construction of K.S.A. § 84–9–310 (1965) and K.S.A. § 34–266 (Supp.1980). K.S.A. § 84–9–310 provides:

*When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.*

Section 9–310 is designed to subordinate *perfected security interests to the claims of later statutory lienors in possession of the collateral . . .*

\* \* \* \* \* \*

*The policy behind 9–310 is to protect the statutory lienor whose work is intended 'to . . . preserve the value of the collateral' and thus promote the policy behind state-created possessory liens arising by statute or under the common law.*

B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 3.7[1] at 3–34 to –35 (1980).

There has been some discussion whether storage or warehouseman's liens are contemplated by § 9–310. Both the Kansas and Official Comments to § 9–310 provide the section protects:

*liens securing claims arising from work intended to enhance or preserve the value of the collateral . . .*

There can be no argument either that storing goods preserves the value of the goods or that *(t)he service of a warehouse in storing goods may be every bit as important as the service of an artisan in repairing them,* B. Clark, id. ¶ 3.7[2], at 3–36, and the cases are in accord.

In *In Re Big Boy Mobile Homes of Knoxville, Inc.,* 10 UCC Rep. 1037 (E.D.Bankr. Tenn.1972), a garage keeper towed and stored a vehicle after it broke down on the highway. The court noted that although

the term "services and materials" in § 9–310 is not defined, the official comment states the section gives priority to lienors who preserved the value of the collateral. The court held storage preserved the value of the collateral within the meaning of § 9–310 and awarded the lienor priority over a prior perfected secured party.

In *Security National Bank & Trust Co. of Norman v. Reisinger*, 610 P.2d 1222, 29 U.C.C.Rep. 1061 (Okl.1980), space was rented from a warehouseman, but rent was not paid. The stored property was sold by the warehouseman to satisfy the warehouseman's lien on the property granted under Title 42 O.S.1971 § 91. The court held that even though there was a prior perfected secured party with a security interest in the property sold, the warehouseman did not convert the property because of the priority given in § 9–310.

In *Franklin Investment Co. v. District of Columbia*, 31 UCC Rep. 296 (D.C.Sup.1981), the District of Columbia police towed and stored a car and were allowed a priority over a prior perfected finance company based on a storage lien. See also, *Associates Financial Services Co. v. O'Dell*, 491 Pa. 1, 417 A.2d 604, 29 UCC Rep. 1422 (1980) (Flaherty, J., dissenting).

Therefore, the Court holds a statutory storage or warehouseman lien that does not state otherwise is accorded a "superpriority" over prior perfected secured parties under K.S.A. § 84–9–310 (1965).

■ The only issue remaining is whether Coop had a statutory warehouseman lien. K.S.A. § 34–266 (1973) provides:

*(A) warehouseman shall have a lien on grain deposited or on the proceeds thereof in his hands for all lawful charges for storage and preservation of the grain; also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, cooperage <u>and other charges and expenses in relation to such grain</u>; also for reasonable charges and expenses for notice and advertisements of sale, and for sale of grain where default has been made in satisfying the warehouseman's lien. (emphasis added)*

Initially, under K.S.A. § 34–227, grain received but not purchased by a warehouseman is stored grain, and even when weight tickets or scale tickets are issued instead of warehouse receipts, the warehouseman acquires a lien under K.S.A. § 34–266. *Hartford Accident and Indemnity Co. v. Kansas*, 247 F.2d 315 (10th Cir. 1957); *State, ex rel. Crawford v. Centerville Grain Co.*, 5 Kan. App.2d 451, 618 P.2d 1206 (1980); *Stevens v. Farmers Elevator Mutual Ins. Co.*, 197 Kan. 74, 79, 415 P.2d 236 (1966).

K.S.A. § 34–266 is derived from and is almost identical to § 27 of the Uniform Warehouse Receipts Act (ULA 1959). The only words Kansas changed were "goods" in the Uniform Act to "grain" and "coopering" in the Uniform Act to "cooperage." Therefore, any cases construing § 27 of the Uniform Act are extremely persuasive.

In *State Bank of Wilbur v. Almira Farmers' Warehouse Co.*, 123 Wash. 354, 212 P. 543 (1923), wheat grown by Hansen was deposited in a grain elevator (warehouseman) and weight tickets were issued. Washington had adopted § 27 of the Uniform Act. Further money was advanced by the warehouseman to Hansen and was used to purchase twine, sacks, hay and coal used to grow and handle the grain. The advances were not noted on the weight tickets. Hansen defaulted and the warehouseman claimed a lien under § 27 for the advances made. The court held the warehouseman had a lien for any advances made in connection with the growing and handling of the grain under Wash.Stat. Section 3369–27 (1915) (Uniform Law § 27). 212 P. at 545.

In *San Angelo Wine and Spirits Corp. v. So. End Warehouse Co.*, 19 Cal.App.2d 749, 61 P.2d 1235 (1936), a warehouseman holding stored liquor was allowed a lien for storage charges, *and expenditures and money advanced* for taxes owed by the bailor to the Internal Revenue Service.

Therefore, if money is advanced, credit is given, or any other charges are incurred "in relation to such grain," under K.S.A. § 34–266 and Uniform Act § 27 the warehouse-

man receives a lien on the bailed grain in the amount due it by the bailor. Under § 84–9–310 this lien is superior to *any* security interest unless the statute granting the lien provides otherwise.

K.S.A. § 34–266 does not provide otherwise, and the Court holds Coop has priority over the security interest of PCA. Coop's lien secures dumping and storage charges of $353.68, and advancements of credit for the purchase of fertilizer, seed and insecticide as denominated in the invoices attached to its motion in the amount of $8,815.28.

Because the Court holds Coop's lien is superior, the Court does not reach the questions of: whether PCA's financing statement adequately described the real estate on which crops were growing; whether Coop had a lien under K.S.A. § 84–7–209 (Supp.1980), which includes sub-issues of whether scale or weight tickets are warehouse receipts within the meaning of K.S.A. § 84–1–201(45) (Supp.1980), and whether K.S.A. § 84–7–209 is a statutory lien given priority under K.S.A. § 84–9–310.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.