In re James Randall LEWIS, Linda Lee Lewis, Debtors.

Christopher J. REDMOND, Trustee, Plaintiff,

v.

BUCKLIN GRAIN COMPANY, Defendant.

Bankruptcy No. 86–10289.
Adv. No. 86–0480.

United States Bankruptcy Court, D. Kansas.

Jan. 5, 1987.

Supplemental Memorandum And Order of Decision Feb. 25, 1987.

Thomas E. Malone, Karen Humphreys, Redmond, Redmond, O'Brien & Nazar, Wichita, Kan., for plaintiff.

Michael A. Doll, Mangan, Dalton, Trenkle & Rebein, Chartered, Dodge City, Kan., for defendant.

Rand L. Carroll, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for intervenor, Farmers State Bank of Bucklin.

## MEMORANDUM OF DECISION

JOHN K. PEARSON, Bankruptcy Judge.

The instant adversary is before the Court upon the trustee's complaint to avoid a preferential transfer pursuant to 11 U.S.C. § 547. The plaintiff/trustee appeared by Thomas E. Malone and Karen Humphreys of Redmond, Redmond, O'Brien & Nazar, Wichita. Defendant, Bucklin Grain Company, appeared by Michael A. Doll, Mangan, Dalton, Trenkle & Rebein, Chartered, Dodge City, Kansas. Intervenor, Farmers State Bank of Bucklin, Kansas, appeared by Rand L. Carroll of Fleeson, Gooing, Coulson & Kitch, Wichita.

## FACTS

The parties have stipulated to and the Court finds the material facts to be as follows:

1. The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157.

2. On February 6, 1986 James Randall Lewis and Linda Lee Lewis filed a joint petition under Chapter 7 of the United States Bankruptcy Code and Christopher J. Redmond was duly appointed as trustee of the bankruptcy estate.

3. Bucklin Grain Company is a public warehouse for the storage of grain located in Bucklin, Kansas. As part of its business Bucklin Grain Company sells fertilizer, herbicide, fuel, seed, parts and supplies to area farmers. Bucklin Grain Company provides custom application of fertilizer and herbicide and repair services.

4. Pursuant to an agreement entered into on or about March 1, 1985, Bucklin Grain Company agreed to extend credit to the debtors for goods and services necessary for the debtors' 1985 crop production. In return the debtors agreed to pay any indebtedness owed to Bucklin Grain Company at the time the crop was sold. The debtors and Bucklin Grain Company had done business with each other under this type of an agreement since 1978.

5. From May 14, 1985 through November 4, 1985 Bucklin Grain Company furnished the debtors fertilizer, herbicide, custom application, seed, fuel and parts on credit. These goods and services were used to produce and harvest the debtors' 1985 milo crop. The debt owed to Bucklin Grain Company by the debtors for goods and services totaled $22,394.21, including interest, as of December 26, 1985.

6. Between October 16, and November 6, 1985 the debtors delivered 1,931,697 pounds of milo for storage at Bucklin Grain Company for which the debtors were issued scale tickets. No warehouse receipts were issued for the grain.

7. On or about November 19, 1985 the debtors sold 56,000 pounds of the milo, leaving 1,875,697 pounds in storage. The proceeds for the sale were paid jointly to the debtors and to Farmers State Bank of Bucklin.

8. On or about December 24, 1985 the debtors transferred 587,373 pounds of milo to Bucklin Grain Company in satisfaction of their debt. The milo transferred to Bucklin Grain Company had a value of $21,732.80. On the same date, the debtors sold the remaining 1,288,324 pounds of milo for $46,697.14, net of storage and fees. The proceeds were paid jointly to the debtors and to Farmers State Bank of Bucklin.

9. On or about December 27, 1985, $21,732.80 was credited to the account owed by the debtors to Bucklin Grain Company.

10. Farmers State Bank, Bucklin, Kansas, holds a properly perfected security in-

terest in all crops now grown for harvest in 1985 and the proceeds therefrom.[1]

11. The debtors presently are indebted to Farmers State Bank in the principal amount of $13,250.21.

12. Bucklin Grain Company took no action pursuant to the provisions of K.S.A. 58–241, et seq., to perfect any agricultural production input lien for goods and services furnished in the production of the milo crop referenced above.

## DISCUSSION

Section 547 provides in pertinent part as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The milo was transferred to Bucklin Grain Company, a creditor of the debtors, who benefited thereby. The transfer was on account of an antecedent debt owed by the debtors to the Bucklin Grain Company for fertilizer, herbicide, custom application, seed, fuel and parts furnished to the debtors from May 14, 1985 to November 4, 1985. Under § 547(f) the debtors are presumed to have been insolvent on and during the ninety days immediately preceding the filing of the petition. This provision acts as a presumption of insolvency unless rebutted. In the instant case the transfer occurred well within the ninety-day preference period and the creditor has not rebutted the statutory presumption. Therefore the transfer is deemed to have been made while the debtors were insolvent. Thus, the parties have stipulated to all but one element of a § 547 preference.

At issue is whether the December 24, 1985 transfer enabled the creditor, Bucklin Grain, to receive more than the creditor would have received had the transfer not been made. If Bucklin Grain was merely a general unsecured creditor then the transfer clearly enabled it to receive more than it would have received had the transfer not been made. However, if the transfer was made in satisfaction of a perfected security interest, an agricultural production input lien or of a valid statutory lien, Bucklin Grain did *not* receive more as a result of the transfer than it would have received had the transfer not been made.

Even assuming that Bucklin's taking possession of the milo created a perfected security interest pursuant to K.S.A. 84–9–203(a), possession was taken and thus perfection was "made" within the ninety-day preference period and the transfer would therefore still be avoidable by the trustee. *See* 4 Collier on Bankruptcy ¶ 547.52, p. 547–177.

Defendant cannot claim an agricultural input lien as there was no compliance with the provisions of K.S.A. 58–241, et seq. *See* Stipulation No. 12.

Thus the *real* issue is whether or not the defendant has a statutory lien pursuant to

---

1. The Court does not now decide whether the recovery of the preferential payment to Bucklin Grain Company will in any way inure to the benefit of the Farmers State Bank. Nor does it determine the application of 11 U.S.C. § 551.

K.S.A. 34–266. The statute provides in pertinent part:

> ... a warehouseman shall have a lien on grain deposited or on the proceeds thereof in his hands for all lawful charges for storage and preservation of the grain; also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, cooperage and other charges and expenses in relation to such grain; also for reasonable charges and expenses for notice and advertisements of sale, and for sale of grain where default has been made in satisfying the warehouseman's lien.

■ The defendant alleges that the warehouseman's lien secures credit advanced for fertilizer, insecticides and other expenses used to produce the grain and relies primarily on *In re Ragan*, 15 B.R. 376 (Bankr.D.Kan.1981). There the court held that the lien created by K.S.A. 34–266 secured credit for the purchase of fertilizer, seed and insecticide used by the debtors to produce the grain which was subsequently deposited with the Jefferson County Cooperative Association.

In opposition the trustee argues that the *Ragan* decision adopts an overly broad and expansive construction of the statute and should not be followed by this Court. The Court is compelled to agree with the trustee.

The *Ragan* opinion was reversed by the United States District Court for the District of Kansas in an unpublished Memorandum and Order opinion filed October 12, 1982 captioned *Jefferson County Coop. Ass'n. v. Northeast Kansas Production Credit Ass'n.*, 73 B.R. 3 (D.Kan.1982). The District Court stated:

> It is consistent with the objectives of the warehouseman's lien statute and the strict construction of that law to limit the claims covered by the statute to those related to stored grain and the business of storing grain.... Expenses involved with growing crops do not concern warehousing and should not be covered by a warehouseman's lien.... Hence "other charges and expenses in relation to such grain" means charges and expenses related to harvested grain deposited with a warehouseman. *It does not refer to expenses involved with growing grain.*

*Id.* at p. 5. (Emphasis added.)

The District Court further discussed two cases, *State Bank of Wilbur v. Almira Farmers Warehouse Co.*, 123 Wash. 354, 212 P. 543 (1923) and *San Angelo Wine and Spirits Corp. v. South End Warehouse Co.*, 19 Cal.App.2d Supp. 749, 61 P.2d 1235 (1936), which were relied upon by the Bankruptcy Court in *Ragan* and by the defendant herein. The Washington Supreme Court in *State Bank of Wilbur v. Almira Farmers Warehouse Co.*, 123 Wash. 354, 212 P. 543 (1923), on very similar facts concerning a similar statute held that the statute's coverage extended to expenses incurred for production of the growing crops which were subsequently stored by the warehouseman. However, the District Court explicitly disagreed with that holding because it did not strictly construe the lien statute and ignored the definition of "goods" contained in the Washington statute. Regarding the *San Angelo Wine* case, the District Court stated:

> We believe this case is distinguishable on the grounds that the money in question was advanced while the warehouseman was in possession of goods deposited by the debtor. In the case at bar [*Ragan*], the Coop was not in possession of the debtor's milo when the expenses and charges in question were incurred.

*Id.* at 6 n. 4.

Though the agricultural production input lien statute (K.S.A. 58–241) was not enacted at the time of the *Ragan* opinion and the District Court reversal thereof, its enactment supports the District Court's interpretation of K.S.A. 34–266. If the defendant's construction of the warehouseman's lien statute were correct, there would be no need to ever comply with the provisions of K.S.A. 58–241, et seq., so long as the debtor stored grain with the input creditor. Indeed there would be good reason for the agricultural supplier to *not* comply with

the Agricultural Production Input Liens Act. K.S.A. 58–242(d) provides:

> If the lender furnishes a letter of commitment to advance part or all of the retail cost stated in the lien notification statement, or a written refusal to furnish a letter of commitment, the lien of the supplier shall not have priority over a previously perfected security interest of the lender.

The "lien notification statement" must be sent by the agricultural supplier if the supplier wishes to establish a lien prior to that of the previous lender. If the agricultural supplier complies with the provisions of the Agricultural Production Input Liens Act and the lender sends a written refusal to furnish such a "letter of commitment" the agricultural supplier runs the risk of not having priority over the previously perfected security interest. The agricultural supplier would be better off simply providing credit for production of the grain and insist that the debtor deposit the grain with the agricultural supplier and thereafter rely on the warehouseman's statute. The agricultural production input lien statute would thereby be rendered essentially futile. The two statutes only become consistent when the construction of the United States District Court for the District of Kansas is placed upon the warehouseman's lien statute. The proper construction of the warehouseman's lien statute limits the charges and expenses secured by the lien to those incurred by the warehouseman while in possession of grain owned by the debtor.

■ Therefore with respect to the credit advanced for the expenses involved in the production of the grain the Bucklin Grain Company is a general unsecured creditor which received more from the December 24, 1985 transfer than it would have received had the transfer never been made. All the elements of the preferential transfer having been met, the Court finds that judgment shall be entered for the trustee in the amount of $21,732.80.

The foregoing constitutes findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a) and Fed.R.Bankr.P.

7052. A separate judgment will be entered giving effect to the determinations reached herein.

## SUPPLEMENTAL MEMORANDUM AND ORDER OF DECISION

The instant adversary comes before the Court upon the Bucklin Grain Company's Motion for Reconsideration of the Court's Memorandum of Decision and Judgment on Decision filed January 5, 1987.

The Court declines to amend its findings of fact and conclusions of law. The Bucklin Grain Company's motion for reconsideration and alteration of judgment is denied. However, the Court supplements it memorandum of decision filed January 5, 1987 as follows.

In its prior memorandum the Court found that because possession was taken and perfection was made within the 90–day preference period that the transfer would be avoidable by the trustee. However, in the findings of fact it is clear that possession was taken outside of the 90–day preference period, but for reasons herein expressed the result is not changed.

■ Bucklin Grain Company argues that it has a perfected security interest by having taken possession of the grain. Although K.S.A. 84–9–203(1)(a) provides that a security interest may be taken by possession, the possession must be pursuant to agreement to create a security interest. The Kansas comment to K.S.A. 84–9–203(1)(a) states:

> [A] security interest attaches to collateral and thus becomes enforceable against the debtor and general unsecured creditors if the following three criteria are met: (1) the collateral must be in the possession of the secured party *pursuant to pledge agreement,* or the debtor must have signed a written security agreement.... (Emphasis added.)

There has been no showing that the possession was taken by Bucklin Grain Company for the purpose of creating a security interest, the only relationship shown is that of bailor/bailee. Indeed, that the debtors

were permitted to sell several thousand pounds of the milo, and that the proceeds were paid jointly to the debtors and to the Farmers State Bank of Bucklin, demonstrate that the grain was delivered to Bucklin Grain Company as bailee. A creditor would have no notice that a warehouse was attempting to perfect a security interest in crops temporarily housed in the warehouse for sale at debtors' direction. Bucklin Grain Company did not show the requisite intent to possess and exercise control of the collateral sufficient to put third parties on notice of perfection of a security interest therein. *See In re Rogers*, 39 B.R. 295 (Bankr.W.D.Ky.1984). *See also In re Transport Equipment Co. v. Guaranty State Bank*, 518 F.2d 377 (10th Cir.1975). The Court therefore finds that no security interest was intended to be created by possession of Bucklin Grain Company nor could there have been any perfection of a security interest because of the control retained by the debtors.

Bucklin Grain Company further asks the Court to reconsider its statutory lien under the Agricultural Production Input Liens Act. As the parties stipulated (*see* Stipulation No. 12) and as the Bucklin Grain Company admits in its Motion for Reconsideration, the statutory lien is unperfected. K.S.A. 58–244, the Agricultural Liens Act, provides that a lien that is not perfected shall be entitled to the same priority as an unperfected security interest. K.S.A. 84–9–301 provides that an unperfected security interest is subordinate to the rights of a lien creditor. A lien creditor is specifically defined as a trustee in bankruptcy from the date of the filing of the petition.

■ Since the trustee's rights as lien creditor are superior to the rights of the grain company which has an unperfected interest, the grain company's interest may be avoided and any payment made to the grain company within the 90–day preference period is a preferential transfer. *See In re American Properties, Inc.*, 14 B.R. 637 (Bankr.D.Kan.1981).

■ Furthermore, the lien is avoidable pursuant to § 545 because it is not perfected against a bona fide purchaser pursuant to § 545(2). The legislative history to § 545 specifically provides that under § 545 the trustee may avoid a lien even though the lien has been enforced by sale prior to commencement of the case. *See* H.Rep. No. 95–595, p. 371, U.S.Code Cong. & Admin.News 1978, p. 5787, Bankr.L.Ed., Legislative History § 82:17.

The foregoing memorandum supplements the Memorandum of Decision filed January 5, 1987. The Judgment on Decision filed January 5, 1987 stands as originally entered.

The Bucklin Grain Company's Motion for Reconsideration is denied.

IT IS SO ORDERED.